No. 9825.

## The State v. Doe.

CRIMINAL LAW.—*Dogs Not Subject of Larceny.*—*Common Law.*—There is neither at common law nor by the law of this State such a property in dogs as makes them the subject of larceny.

From the Huntington Circuit Court.

*D. P. Baldwin,* Attorney General, *C. W. Watkins,* Prosecuting Attorney, and *M. L. Spencer,* for the State.

*B. F. Ibach* and *B. M. Cobb,* for appellee.

WORDEN, J.—An indictment was found against the appellee in the court below, charging that the defendant, " on the 12th day of October, 1881, at," etc., " did then and there unlawfully and feloniously steal, take and lead away two dogs, of the value of $50, of the goods and chattels of George Stultz, contrary," etc.

On motion of the defendant the indictment was quashed and the State excepted. The State brings the case here for a review of the decision below.

It is claimed by the appellee that dogs are not the subject of felonious larceny, and therefore that the indictment was properly quashed. This position is controverted on the part of the State.

At common law, a dog was not the subject of larceny. A few references to elementary books may not be out of place.

In 1 Hale's Pleas of the Crown, 1st Am. ed., 512, it is said that " Larciny can not be committed in some things, whereof the owner may have a lawful property, and such whereupon he may maintain an action of trespass, in respect to the baseness of their nature, as mastiffs, spaniels, gray-hounds, blood-hounds, or of some things wild by nature, yet reclaimed by art or industry, as bears, foxes, ferrets, etc., or their whelps, or calves, because, tho reclaimed, they serve not for food but pleasure, and so differ from pheasants, swans, etc., made tame, which, tho wild by nature, serve for food."

Blackstone says: "As to those animals, which do not serve for food, and which therefore the law holds to have no intrinsic value, as dogs of all sorts, and other creatures kept for whim and pleasure, though a man may have a base property therein, and maintain a civil action for the loss of them, yet they are not of such estimation, as that the crime of stealing them amounts to larceny." 4 Bl. Com. 236.

Bishop says: "Of those of which there can be no larceny, though reclaimed, are mentioned dogs, cats, bears, foxes, apes, monkeys, polecats, ferrets, squirrels, parrots, singing-birds, martins and coons. Though animals of the latter class may, when reclaimed, have a recognized value, and the right of property in them be protected in civil jurisprudence, it is otherwise in criminal; on the ground, probably, that anciently they were deemed of no determinate worth, and thus was established a rule which the courts could not afterwards change." 2 Bishop Crim. Law, sec. 773.

There may be a property in dogs that will be protected by law. They may be valuable. Many noble animals of the species doubtless are, and so we may suppose are the whole

The State *v.* Doe.

host of "mongrel whelps of low degree," in the estimation of their owners. But this is not decisive of the question involved.

We have seen by the common-law authorities, that while dogs may have a value, and the owners may have a property in them which the law will protect, still they are not the subject of larceny. They are the subject of malicious trespass. *Kinsman* v. *The State*, 77 Ind. 132. This, however, does not settle the question. It does not follow that because a dog is the subject of malicious trespass, he is the subject of larceny. In *Parker* v. *Mise*, 27 Ala. 480, it was held that an action would lie for wrongfully shooting the plaintiff's dog; yet in the later case of *Ward* v. *The State*, 48 Ala. 161, while the correctness of the former decision was recognized, it was held, on common-law grounds, that larceny could not be committed of a dog.

In 2 Wharton Crim. Law, sec. 1755, it is said that, " as to all other animals which do not serve for food, such as dogs and ferrets, though tame and salable, or other creatures kept for whim and pleasure, stealing these does not amount to larceny at common law. It is otherwise, however, when they are taxed." Reference is made to the case of *People* v. *Maloney*, 1 Parker C. C. 593. See also *People* v. *Campbell*, 4 Parker C. C. 386.

If dogs were taxed in Indiana as other property, for revenue purposes, it would be a strong circumstance to show an intent on the part of the Legislature to abrogate the common-law rule, and make them the subjects of larceny like any other personal property. But, so far as we are advised, dogs have never been thus taxed.

A specific tax has been, from time to time, levied upon dogs, and, when collected, applied generally, if not always, to payment for sheep killed by them. See the statutes cited in the case of *Kinsman* v. *The State, supra*. See also as to dog fund, section 2651, R. S. 1881. This discrimination in the mode of taxing dogs shows that the Legislature did not intend to place them in all respects upon the footing of other personal prop-

erty.    The tax is levied *per capita* on the dogs, and not *ad valo-rem*.    Dogs are not by these statutes recognized as subjects of general taxation for revenue purposes, and taxed accordingly. The object of the tax has been the non-production of dogs, rather than the production of revenue.    Taxation for revenue must be uniform; based upon a just valuation of the property taxed.    Constitution, art. 10, section 1.

These specific taxes upon dogs can be upheld only on the ground that they are not revenue measures, but police regu-lations.    *Bright* v. *McCullough*, 27 Ind. 223; *Mitchell* v. *Wil-liams*, 27 Ind. 62; *State* v. *Cornnall*, 27 Ind. 120; *Haller* v. *Sher-idan*, 27 Ind. 494.    In *Mitchell* v. *Williams, supra*, the court said: " That, as a measure of internal police, the Legislature has the power to encourage the rearing of sheep, and, with that object in view, to discourage the keeping of dogs, animals which are not even the subject of larceny at common law, can not be doubted." So far, therefore, as any inference can be drawn from the taxation of dogs, considering the character and purpose of the taxation, it is rather against than in favor of the theory that the Legislature intended to abrogate the common-law princi-ple and make them the subject of larceny.

This brings us to considerations bearing more directly upon the question involved.

By section 1933, R. S. 1881, which took effect September 19th, 1881, it is made grand larceny to steal, etc., "the per-sonal goods of another" of the value of twenty-five dollars or upwards, and the punishment is imprisonment in the State prison from one to fourteen years, fine and disfranchisement.

By section 1934 it is made petit larceny to steal, etc., "the personal goods of another" of the value of less than twenty-five dollars; and the punishment is imprisonment in the State prison from one to three years, fine and disfranchisement; or imprisonment in the county jail not more than a year, fine and disfranchisement.

These offences are both denominated felonies.    Section 1573.

Now, in some sense and for some purposes, dogs may, doubt-

less, be regarded as "personal goods." But the question is, did the Legislature intend, by the use of those words in defining grand and petit larceny, to include dogs? We are not left solely to the common-law principle, that dogs are not the subject of larceny, for an answer to this question. That principle, together with concurrent legislation, settles it conclusively.

By section 2647 of the same statutory revision it is provided, that any person who shall own or harbor any animal of the dog kind shall, on or before the first of April, 1882, and yearly thereafter, report to the proper township trustee the number of dogs owned or harbored by him, which exceed the age of six months; the trustee is to register and number the same, with a brief description of each dog, by sex, color and breed, and furnish the owner with a metallic tag, with number and year to correspond with register, which tag the owner is to attach to the neck of the dog by a collar; the owner is to pay one dollar for a male dog, two dollars for a female, and, if more than one dog is kept, two dollars for each additional dog.

By section 2648 it is made unlawful for any dog to run at large without collar and tag as provided for, and it is made lawful for any person to kill the same.

By section 2649 it is made the duty of the constables to "proceed to kill all dogs on and after the first day of April, 1882, which shall be found at any time thereafter without collar and tag as herein provided." The section contains also the following provision : "Any person who shall maliciously injure or kill, or any person who shall steal, take, and carry away any dog which has been duly registered and is wearing a metallic tag according to the provisions of this act, shall be deemed guilty of a misdemeanor, and, upon conviction, be fined in any sum not exceeding $200, to which may be added imprisonment in the county jail for any term not exceeding thirty days."

It is thus seen that unregistered and untagged dogs are placed under the ban of outlawry. Every man may slay them

when running at large, and it is made the duty of. constables. to do so 'when-found.

It is made a misdemeanor to maliciously injure or kill, or to steal a registered and tagged dog.

In view of the common-law principle and this legislation,. it is impossible to suppose that the Legislature intended by , the words " personal goods," in defining grand and petit larceny, to include dogs.

The fact that the time has not yet come when dogs are required to be registered is of no importance to the question. here involved. The intention of the Legislature in the several enactments is unmistakable.

The indictment was properly quashed.

The judgment below is affirmed.