No. 10,251.

## ROBINSON v. THE STATE.

CRIMINAL LAW.—*Statute Construed.*—*Constitutional Law.*—The statute, R. S. 1881, section 1803, concerning the impeachment of witnesses, applies as well to prosecutions for crimes committed before as after it took effect, and is not an *ex post facto* law forbidden by the constitution.

SAME.—Statutes which merely affect modes of procedure in prosecutions for crime may be made to operate retrospectively.

SAME.— *Witness.*— *Impeachment.*— *Evidence.*—*Character.*— *Practice.*—The defendant in a criminal prosecution having become a witness for himself, the State then produced a witness who testified that his general moral character was bad, and, on cross-examination, that he was reputed to be a drinking and profane man.

*Held,* that this did not warrant the State in proving, on re-examination, that the defendant was reputed to be a dishonest man.

SAME.—*Receiving and Concealing Stolen Goods.*—*Knowledge.*—*Instructions to Jury.*—In a prosecution for receiving and concealing stolen goods, an instruction, that if the defendant received and concealed the goods, then having such information as would lead a person of common honesty, prudence and judgment to the conclusion that the goods were stolen, then he acted with guilty knowledge, is an invasion of the province of the jury, and therefore error. It is not matter of law, nor is it even correct as matter of fact.

From the Clark Circuit Court.

*C. L. Jewett,* for appellant.

*D. P. Baldwin,* Attorney General, and *F. B. Burke,* Prosecuting Attorney, for the State.

WORDEN, J.—Prosecution against the appellant by affidavit and information, for knowingly receiving and concealing

certain moneys which had theretofore been stolen by William Conley and William Donohue. Trial, conviction, and sentence of imprisonment in the State prison.

On the trial the appellant was a witness in his own behalf, and testified in the cause. After the appellant had thus testified, the State, at the proper time, introduced as a witness one Silas Buchanan, and proved by him that he was acquainted with the general moral character of the defendant, and asked him what that character was. To this question the appellant, by counsel, objected, on the ground that his moral character was not in issue; but the court overruled the objection, and the witness answered that the general moral character of the defendant was bad.

The appellant claims that the admission of this testimony was erroneous.

The appellant had testified in his own behalf as a witness, and the testimony thus given by the State was intended to impeach him as such witness. The statute provides that, "In all questions affecting the credibility of a witness, his general moral character may be given in evidence." R. S. 1881, sec. 1803. This is the first statute, so far as we are advised, that made this rule applicable to criminal cases. It did not, however, go into effect until the 19th day of September, 1881. State v. Doe, 79 Ind. 9 (41 Am. R. 599). This prosecution was instituted after that time, but the crime was charged to have been committed before, and the evidence related to a time before that date. The appellant claims that the statute introduces a new rule of evidence, which renders conviction easier, and that as to offences committed before its passage, it is ex post facto and void. We, however, can not concur in this view of the question.

The statute is general, and applies to the trial of all criminal cases. It furnishes merely a rule of practice applicable alike to trials for offences committed before and after its passage. It does not come within the constitutional inhibition of the passage of ex post facto laws.

We can not express our views upon the question more clearly than by quoting the following passage from Cooley Const. Lim., 5th ed., p. 329. The author says:

"But so far as mere modes of procedure are concerned, a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts, in existence when its facts arose. The legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it can not lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime. Statutes giving the government additional challenges, and others which authorized the amendment of indictments, have been sustained and applied to past transactions, as doubtless would be any similar statute, calculated merely to improve the remedy, and in its operation working no injustice to the defendant, and depriving him of no substantial right." See, also, Story Const., 4th ed., section 1345, note 2, p. 214.

The court committed no error in the admission of the testimony.

The State, at the proper time, further to impeach the appellant as a witness, introduced John C. Everman, and proved by him that he was acquainted with the general moral character of the appellant, and that it was bad.

The defendant's counsel, on cross-examination, asked the following question:

"The defendant has the reputation of being a drinking, swearing man, has he not?" To which the witness answered, "He has."

On re-examination the State asked the witness the follow-

Robinson v. The State.

ing question : "What is the defendant's reputation for honesty?"

To this question the counsel for the defendant objected, on the ground that his reputation or character for honesty was not in issue, but the objection was overruled, "because of the question asked by the defendant's counsel," and the witness answered that the defendant's reputation for honesty was bad.

In this ruling we think the court committed an error.

The defendant had not, by proof of good character, put his character in issue, and it was not competent for the State to attack it in the first instance. He had, however, become a witness, and it was competent for the State to impeach him in the same manner that it might impeach any other witness. For this purpose the State introduced testimony of his general moral character under the statute. The statute was probably intended to be cumulative, and not to take away the right of a party, seeking to impeach a witness, to prove his general character for truth and veracity.

When the State introduced its testimony in respect to the appellant's general moral character, it opened the door to such a cross-examination as might be necessary to develop particular traits of character, with a view to enable the jury to determine how far, if at all, such general moral character should affect his credibility as a witness; for the credibility of the witness is the sole question involved in such enquiry. The cross-examination in this case simply developed the fact that the appellant had the reputation of being a drinking, swearing man. We do not see how this could open the door to the State to prove, upon re-examination, the defendant's reputation for honesty, the lack of which would be much more likely to affect him in his capacity of defendant than his credibility as a witness. The cross-examination was not sufficient to make it competent for the State to prove the particular trait of the appellant's general moral character.

The court charged, among other things, as follows :

"If you find there was a larceny, and that the defendant

received all or a part of the stolen property, and concealed it,. and at the time he received and concealed the same he had such information as would lead a person of common honesty, prudence and judgment to the conclusion that the property received had been stolen, then he received and concealed the same with a guilty knowledge, such as renders him guilty of receiving and concealing stolen property, knowing it to have been stolen."

This charge was clearly erroneous. Guilty knowledge was purely a question of fact for the determination of the jury; and the court could not, as matter of law, tell them what would be sufficient evidence of such guilty knowledge. The court had no right thus to invade the province of the jury.

Besides this, the charge is in itself erroneous. Suppose that a person of common honesty is charged with knowingly receiving stolen property, but suppose that he lacks common prudence and judgment (a misfortune that many labor under),. and suppose that, in consequence of such lack of prudence and judgment, he received the property with such information as would have led a person of common prudence and judgment. to the conclusion that it had been stolen. If, in such case, he is convicted, he is convicted simply because of a lack of prudence and judgment, and not because he had, in any just sense,. any guilty knowledge. Any peculiarities of the individual, as well as all the circumstances of the case, may well be taken into account in determining the question of guilty knowledge.

The motion for a new trial was based in part upon newly discovered evidence, but the question arising under this branch of the motion need not be considered, as the judgment must be reversed for reasons already stated.

The judgment below is reversed, and the cause remanded for a new trial.

NOTE.—The clerk will give the proper notice for the return of the prisoner.