### THE STATE v. THOMPSON, *Appellant*.

#### In Banc, November 16, 1897.

1. **Ex Post Facto Law:** ADDING ANOTHER JUDGE TO ST. LOUIS CRIMINAL COURT. In November, 1894, defendant was indicted for murder in the St. Louis Criminal Court, which at that time consisted of only one judge. In 1895 the legislature made provision for two judges thereof, the court to consist of two divisions, each to have "all the powers and jurisdiction theretofore had and exercised by the said court." Edmunds, J., remained judge of division one; and Harvey was appointed judge of division two. The case was tried before division two in May, 1896, to which it had been sent from division one because of an application for change of venue by defendant. In reply to defendant's plea to the jurisdiction, the Supreme Court holds that the act of 1895, creating two divisions of the court, is in no sense an *ex post facto* law, but simply a measure to increase the efficiency of the court, with the same jurisdiction it had previously possessed.

2. **Change of Venue:** SPECIAL JUDGE: REPEAL OF STATUTE.' The defendant in proper time and manner made application before Judge Edmunds of division one of the St. Louis Criminal Court, alleging that said judge would not give him a fair trial and that he would not fairly pass upon his application for a change of venue. Judge Edmunds granted the application in so for as it disqualified him and ordered the case sent to Judge Harvey, of division two of said court, to which defendant objected, demanding the election of a special judge. Held, that no error was committed, and that that part of section 4174, Revised Statutes 1889, which required the calling in of another judge to decide on an application for a change of venue, was repealed by the act of 1895.

3. ————: PREJUDICE OF INHABITANTS: FINDING OF FACT BY TRIAL JUDGE. The trial court heard the evidence on defendant's application for a change of venue charging that the inhabitants of St. Louis were so prejudiced against him that he could not obtain a fair trial, and found as *a fact* that there was no such prejudice, and that finding this court will not disturb in the absence of a showing of the abuse of the court's discretion.

4. ————. A defendant charged with crime has no constitutional right to a change of venue. The legislature may prescribe the terms and conditions upon which changes of venue may be granted.

5. **Continuance:** WAIVER. Defendant filed motion for continuance on April 5, alleging absence of witness in Colorado, and the issuance of two subpoenas within a week, both of which had been returned "not found." His motion was overruled, and the case set down for trial on May 25. On that day both sides announced ready. *Held,* that the application showed no diligence, and *held*, also, that defendant's going to trial on May 25 without objection *waived* any error to overruling the motion.

6. **Oath Prior to Examination of Viscera.** There is no law requiring that a chemist be sworn before he examines deceased's viscera for strychnine.

7. **Ex Post Facto Laws:** RENDERING EVIDENCE COMPETENT PREVIOUSLY INCOMPETENT. After the commission of the crime in this case the legislature passed an act (Laws of 1895, p. 284) providing that "comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine, shall be permitted to be made by witnesses, and such writing and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of genuineness or otherwise of the writing in dispute." At the trial certain letters written by defendant to his wife and others were offered for the purpose of comparison with the prescription for strychnine, with which deceased had been killed. These letters,

according to the decisions of this court prior to the passage of said act, were incompetent, and since its passage are competent if the law itself is not *ex post facto* as to trials subsequent to its passage. *Held*, that the law is not *ex post facto*; that it does not alter the degree nor lessen the amount or measure of the proof necessary for a conviction when the crime was committed. *Held*, that no *vested right* of defendant was disturbed by said act; that it is only an exercise of the power of the State to provide *methods of procedure* in her courts. (SHERWOOD, J., and BARCLAY, C. J., *dissenting*.)

8. ———. The various definitions of *ex post facto* laws, as affecting testimony, are considered in this opinion.

9. **Evidence:** COMPARISON OF HANDWRITING. The act of 1895, styled therein as section 8944a of Revised Statutes 1889, in reference to comparisons with other writings in order to show the genuineness of the paper offered in evidence, yet leaves it to the jury to determine the similarity of such writings to the disputed paper, and also permits the opposite party to attack their genuineness.

*Appeal from St. Louis Criminal Court.*—HON. THOMAS B. HARVEY, Judge.

AFFIRMED.

*Marion C. Early* for appellant.

It was error to admit in evidence for the purpose of comparison certain extraneous handwritings under the provisions of section 8944a, Session Laws of 1895, because the same is in violation of article 1, section 10, Constitution of the United States, and also in violation of article 2, section 15, Constitution of Missouri, which provides that no *ex post facto* law shall be passed. *State v. Bond*, 4 Jones (N. C.), 4; *Hart v. State*, 40 Ala. 32; *State v. Johnson*, 12 Minn. 386; *Calder v. Bull*, 3 Dallas, 386; *Kring v. Missouri*, 107 U. S. 221; Story on the Constitution, sec. 1345; Cooley, Const. Lim., pp. 319–325; Hare's Am. Const. Law, p. 565; Kent's Commentaries, p. 458; Black on Const. Prohibitions, sec. 234, *et seq.;* Miller on the Const., p. 587; *Hopt v. Utah*, 110 U. S. 574.

*Edward C. Crow,* Attorney-General, *C. O. Bishop* and *T. C. Egger* for the State.

(1)   There was no error in overruling appellant's application for a change of venue. *State v. Wilson,* 85 Mo. 139; *State v. Bohanan,* 76 Mo. 564. (2) The point made that the above cited act of 1895 is *ex post facto* as to this cause is not preserved in the motion for new trial and therefore is not properly here for review.    The contention of appellant, however, is fully met by *State v. Taylor,* 134 Mo. 109. (3) The law creating two divsions of one tribunal having the same powers and jointly exercising the same jurisdiction as those possessed and exercised by that tribunal previously when undivided is not *ex post facto.  State v. Jackson,* 105 Mo. 196; *Duncan v. Missouri,* 152 U. S. 377.  (4)  A change of venue is not a constitutional right, and it is entirely competent for the legislature to provide the terms upon which a change, if any, shall be granted. *State ex rel. v. Wofford,* 119 Mo. 381. (5)  The writing was competent (Act of 1895, Session Acts 1895, p. 284), as laws which change the rules of evidence relate only to the remedy and are constitutional, although the effect is to render that competent which was before incompetent. *State v. Jackson,* 80 Mo. 175; Cooley, Const. Lim. [3 Ed.], p. 367; Whart. Crim. Ev., note in sec. 360a.

### IN DIVISION TWO.

GANTT, J.—At the November term, 1894, of the St. Louis Criminal Court, the defendant was indicted for the murder in the first degree of Joseph M. Cunningham, the sexton of St. Peter's Episcopal church in the city of St. Louis.    He was arraigned, tried and convicted of that crime and appealed to this court.    The judgment of the criminal court was reversed February 4, 1896.    He was again tried and convicted on May 29,

1896.   After the usual motions for a new trial and in arrest the cause was again appealed to this court.   The opinion of this court on the previous hearing is reported in 132 Mo. 301.   The evidence on this last trial was substantially the same as on the first.   Whatever changes occurred will be noted, if necessary, in the opinion of the court.

At the time the indictment was found, and of the first trial of the case, the laws of this State only made provision for one judge for the St. Louis Criminal Court.   By an act of the General Assembly, approved by the Governor March 26, 1895, the said criminal court was divided into two divisions and provision made for an additional judge for the second division thereof; said act conferring upon each division of said court all the powers and jurisdiction theretofore had and exercised by the said court.   By this act Judge Henry L. Edmunds, the then incumbent, remained judge of division number one of said court, and Hon. Thomas B. Harvey was appointed judge of the other division and duly qualified as such.   Upon the remanding of this cause it was again docketed in Judge Edmunds' division and was set for trial March 9, 1896. On that day the defendant filed his application for a change of venue, verified by himself and two compurgators as required by statute.   In his application he alleged that Judge Edmunds would not give him a fair and impartial trial and would not fairly and impartially pass upon his said application for a change of venue, and that the inhabitants of the city of St. Louis and the county of St. Louis were so prejudiced against him he could not obtain a fair and impartial trial. Judge Edmunds sustained the application so far as it disqualified him from trying the case and transferred the cause to Judge Harvey's division.   To which transfer defendant objected, and demanded the election of a

special judge.   The cause having been transferred, on March 30, 1896, defendant filed his plea to the jurisdiction of said division of the court, which plea was overruled and defendant excepted.   Defendant then filed affidavits in support of his application for a change of venue and again objected to the jurisdiction of Judge Harvey on the ground that the act of 1895 creating said division was *ex post facto;* was unconstitutional and void, which objection was again overruled and exceptions taken and saved.   Thereupon Judge Harvey and division number two of said St. Louis Criminal Court heard the evidence for and against said change of venue and denied the same, and exception was duly saved.   On April 6 the defendant filed an application for continuance on the ground of an absent witness, one G. M. Lewis, whom defendant believed resided in St. Louis or Denver, Colorado; that he believed he could obtain the testimony of said witness in sixty days; that more than a week prior to April 6 he had issued a subpoena for said Lewis and another on April 4, both of which were returned "not found."   This application was overruled and defendant excepted.   Upon the application of the State the cause was continued to the next term on account of an absent witness, and the cause set down for May 25, 1896, on which last mentioned day both sides announced ready for trial and the trial proceeded, resulting in a verdict of guilty.   Having already passed upon the sufficiency of the indictment, and arraignment on the former appeal, it is not necessary to advert to those subjects again.

I.,   The act of March 26, 1895, creating two divisions of the St. Louis Criminal Court, giving to each the same jurisdiction which was possessed and exercised by that court prior to that time, and thereby simply increasing the efficiency of said court for the

disposition of the rapidly accumulating business therein, was clearly within the powers of the legislature. The State has no higher duty than to furnish courts in which public prosecutions may be heard and speedily terminated. The abolition of courts which have proved to be inefficient and the creation of others, leaving unimpaired all the guarantees of the State and Federal Constitutions, are in no proper sense *ex post facto* laws. Cooley, Const. Lim. [5 Ed.] 329; *State v. Jackson*, 105 Mo. 196; *State v. Sullivan*, 14 Rich. Law (S. C.), 281; *Wales v. Belcher*, 3 Pick. (Mass.) 508; *Com. v. Phillips*, 11 Pick. 28; *State v. Moore*, 15 Rich. Law (S. C.), 57.

II. It is objected that Judge Edmunds erred in refusing to call in a judge of another circuit to decide the application for change of venue and in transferring the case to Judge Harvey's division of the court. Counsel's attention had probably not been called to the amendment of section 4174, Revised Statutes 1889, by the act of March 18, 1895. Acts 1895, page 163, section 2. By this amendment so much of section 4174, as it stood prior thereto, which required the calling in of another judge to decide an application for change of venue, was repealed. So that Judge Edmunds only had for his consideration an application for change of venue from his court on account of his alleged prejudice. By section 5 of the act of March 26, 1895, he was required to transfer the case to Judge Harvey's division, and he rightly so ordered. No constitutional question was involved in his action in so doing. It was a mere matter of procedure which it was the duty and right of the legislature to prescribe for the disposition of such cases and was in no sense an *ex post facto* law.

III. Neither was there such error in the refusal of Judge Harvey to grant a change of venue as calls for

review by this court. He heard the witnesses and found as a fact that there was no such prejudice on the part of the inhabitants of St. Louis as would prevent a fair and impartial trial of the defendant, and that finding this court will not disturb in the absence of a showing of abuse of discretion. No doubt exists of the power of the State to prescribe the terms and conditions upon which changes of venue may be granted. There is no constitutional right to such a change. The State very wisely requires the prosecution to be had in the county in which the offense is committed, unless the court is satisfied by the evidence that a fair trial can not be had therein.

IV. There was little merit in the application for continuance. No diligence had been shown to obtain the evidence of the witness and ample time intervened to find him in the fifty days which intervened after the court denied the motion and before the date fixed upon for the trial, if such a witness really was in existence. Moreover, when defendant subsequently went to trial without objection, under the circumstances the point was waived.

V. The defendant objected to the evidence of Dr. Sanger, who testified as an expert chemist to an examination of the viscera of the deceased and to the finding of strychnine therein, on the grounds that he had not been sworn prior to taking charge of the viscera and had not made the analysis while under oath. It is sufficient to say that no precedent for such a position can be found in any treatise on evidence. We can discern no reason why such suppletory oath should be required of an expert witness as a condition precedent to the admission of his evidence. The law makes no such distinction between witnesses. The objection was very properly overruled.

No error was committed in refusing to strike out

the evidence of Nettie Simon merely because she could not definitely identify the man to whom she sold the charlotte russe a few hours before the poisoning.    Her evidence was a material link in the chain of circumstances tending to connect defendant with the crime. Edward Schmidt's evidence as to the sale of a bottle of beer to defendant about noon of the day of the poisoning, of the same brand and brew as that of the empty bottle found in the lunch basket of poisoned lunch, was clearly competent.

When the case was here on a former occasion we held that the statements of the organist Beckett as to the contemporaneous statement of the deceased, when they sat down to eat the lunch, that it was brought to him by "Mrs. McLean's man" (who was shown to be the defendant), was a part of the *res gestae* and as such admissible.    To that ruling we still adhere.    *State v. Thompson*, 132 Mo. 321.

VI.    We have gone through the above assignments because of the importance of the case, but the point of supreme interest to the defendant is the alleged error in admitting certain letters written by the defendant to his wife and to Dr. George for the purpose of comparison with the prescription for strychnine and the threatening letter to the organist.    The judgment was reversed on the former appeal because the court admitted these writings for the purpose of comparison.    See *State v. Thompson*, 132 Mo. 321.    Since the first trial, however, the General Assembly has passed an act which provides that "comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine, shall be permitted to be made by witnesses, and such writing and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of genuineness or otherwise of the writing in dispute."    Session Laws of Missouri, 1895, p. 284.

It is conceded that if this act is constitutional and applies to this case, no error occurred in admitting these letters, but defendant earnestly contends that if this act is to be construed so as to admit this evidence in this case, it is unconstitutional, because it is a violation of article I, section 10 of the Constitution of the United States, and article II, section 15 of the Constitution of Missouri, which forbid the passage of an *ex post facto* law. Chief Justice MARSHALL defined an *ex post facto* law to be one "which renders an act punishable in a manner in which it was not punishable when it was committed." *Fletcher v. Peck*, 6 Cranch, 87. Chancellor Kent commends this definition, asserting that it "is distinguished for its comprehensive brevity and precision." Judge Chase's classification of *ex post facto* laws in *Calder v. Bull*, 3 Dallas (U. S.), 386, has been generally received as an authoritative statement as to the character of such laws. His classification is as follows: "1. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action. 2. Every law that aggravates a crime, or makes it greater than it was, when committed. 3. Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed. 4. Every law that alters the legal rules of evidence *and* receives less or different testimony than the law required at the time of the commission of the offense in order to convict the offender."

It can not be seriously contended that the defendant's case falls within either of the first three classes. Prior to the commission of the crime charged to have been committed by defendant, it was the recognized law of this State that unless writings were in evidence for some legitimate purpose in the case and were admitted to be in the genuine handwriting of the party, or

he was estopped from denying their genuineness, they could not be admitted for the purpose of comparison with disputed writings, or for the purpose of proving handwriting.

Does the act of 1895, page 284, to be known as section 8944a above quoted, which renders writings, proved to the satisfaction of the judge to be genuine, admissible for the purpose of comparison, fall within the fourth class of *ex post facto* laws which alter the legal rules of evidence so as to receive less or different testimony in order to convict the offender? As this fourth class rests entirely upon the authority of the Supreme Court of the United States, we can do no better than to defer to that court for the interpretation of this language which has received but little comment or explanation from our law writers. In *Hopt v. Utah*, 110 U. S. 574, this question arose in this way. By the laws of Utah "persons against whom judgment has been rendered upon a conviction of felony, unless pardoned by the Governor, or such judgment had been reversed on appeal, shall not be witnesses." Compiled Laws Utah, sec. 378.

Hopt was indicted for murder. After the date of the alleged homicide, but prior to the time he was put upon trial, an act of the legislature was passed which repealed said section 378 and made such convicted persons competent witnesses.

One Emerson, who had been convicted of a felony, to wit, murder, was offered as a witness against Hopt, and he objected to his competency, but his objection was overruled. Hopt insisted that if the repealing act of 1882 was to be construed as permitting this convicted felon to testify against him, it was an *ex post facto* law within the meaning of the Constitution of the United States, in that it permitted the crime charged to be established by witnesses whom the law, at the

time the homicide was committed, made incompetent to testify in any case whatever. But the Supreme Court said: "Statutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not *ex post facto* in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done; nor aggravate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed at the time of its commission; *nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed.* Alterations which do not increase the punishment, nor change the ingredients of the offense or the ultimate facts necessary to guilt, but,. leaving untouched the nature of the crime and the amount or degree of proof essential to conviction, only remove *existing restrictions* upon the competency of certain classes of persons as witnesses, relate to modes of procedure only in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed before the jury, can be made applicable to prosecutions or trials thereafter had without reference to the date of the commission of the offense charged." Unless, then, we can say upon principle that there is a difference between rendering competent an incompetent witness after the commission of the crime charged, and the rendering competent written evidence which was incompetent at the time of the act charged, by subsequent general legislation, then such legislation is not *ex post facto*. Can such a distinction be maintained? In the one case, so long as the law renders a convicted felon incompetent, no conviction could be had which depended upon his

testimony.   In the language of counsel, to all intents
the fact  which his evidence would disclose was the
same as if it never existed, but with the restriction upon
his testifying removed, that fact which all along existed
can be shown to establish the ultimate fact.   How does
it differ then from the writing offered?   One way of
establishing the genuineness of a disputed writing is by
comparison, but by the course of decision in this State
prior to and at the  time of  the alleged murder in this
case, the writing offered for comparison with the dis-
puted  writing  must have been in the case for some
legitimate, competent purpose, and its genuineness ad-
mitted, or the party estopped to deny it.   The act of
1895 required  the writings offered for comparison to
be proved to the satisfaction of the court to be genuine;
and if so, then permitted them to be examined and
considered with the disputed writing.   In either case,
that which was incompetent at the time the act was
committed is rendered competent by the subsequent law.
We confess we are unable to differentiate between the
two.   If one is not *ex post facto*, neither is the other.
It will be observed that no particular weight is attached
to the evidence of these writings when admitted.   They
are simply permitted as evidence before the jury.   The
jury are left to determine their similarity to the dis-
puted writing, and the right to attack these writings
themselves is open  to the  prisoner and his counsel.
They are offered solely as a means of arriving at an
ultimate fact.   The law raises no presumption about
them, nor ascribes any special probative force to them.
Just as in  the case of the convicted felon.   Though
admitted  to testify, the jury are still to determine
whether they will or will not credit his evidence. Judge
COOLEY, in his work on Constitutional Limitations [5
Ed.] 329, says:   "But so far as mere modes of pro-
cedure are concerned, a party has no more right, in a

criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts, in existence when its facts arose. The legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it can not lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime."

In *Robinson v. The State*, 84 Ind. 452, it was held that a statute providing that "in all questions affecting the credibility of a witness, his general moral character may be given in evidence," was not *ex post facto*, because it allowed a defendant's character to be impeached in a prosecution for a crime committed before the passage of the act.

In *Mrous v. State*, 21 S. W. Rep. 764, the court of criminal appeals of Texas held that removing restrictions upon the competency of certain classes of persons as witnesses relates to modes of procedure only, in which no one can be said to have a vested right, and which the State on grounds of public policy may regulate at pleasure. Said the court: "It is certainly difficult to understand how opening new sources of light, or increasing the means of proving or detecting crime can be said to require *less* evidence, or become *ex post facto*." See, also, *Laughlin v. Com.*, 13 Bush. (Ky.) 261.

This court, in *O'Bryan v. Allen*, 108 Mo. 227, held that laws which change the rule of evidence relate to the remedy only, and may be applied to existing causes

of action without infringing upon the constitutional guarantees against retrospective legislation. In *Messimer v. McCray*, 113 Mo. 382, it was held that no party has a vested right in the evidence of a witness, and his competency must be determined at the time the evidence is offered in court. If competent when his deposition is taken and subsequently rendered incompetent, the evidence must be rejected. The rule operates both ways.

Our conclusion is that the act does not permit the conviction of defendant *on less evidence* than was required prior to its passage. It is an exercise of the power of the State to provide methods of procedure in her courts. *As to all trials occurring after its enactment* it was *prospective* and not *retroactive*. No vested right of defendant was disturbed by said act; it is not obnoxious to the charge of being *ex post facto* within the meaning of the State or Federal Constitution. We have given the case a careful examination and have thoroughly considered the objections and argument of the counsel for defendant, but have been unable to agree with him. We desire to commend him for the ability and earnestness with which he has defended the prisoner without fee or reward in the discharge of his duty to the court which appointed him.

The judgment of the St. Louis Criminal Court is affirmed and the sentence of the law as therein pronounced is ordered to be carried into execution by the sheriff of the city of St. Louis. BURGESS, J., concurs; SHERWOOD, J., dissents.

## IN BANC.

PER CURIAM.—The foregoing opinion of Judge GANTT was delivered while this cause was pending in Division Two of the court. Afterward the case was transferred to the Court *in banc*, where it has been

fully considered by all the members of the court, a majority of whom agree to affirm the judgment of the trial court on the grounds stated in said opinion, and to adopt said opinion as that of the Court *in banc*. The judgment is affirmed accordingly, GANTT, MACFARLANE, BURGESS, ROBINSON and BRACE, JJ., concurring, and BARCLAY, C. J., and SHERWOOD, J., dissenting.

BARCLAY, C. J. *(dissenting)*.—Certain testimony declared by the second division of this court inadmissible under the law in force at the time of the first trial of this cause (132 Mo. 301) is held by my learned brother GANTT to have been properly admitted at a later trial, because of the passage of a statute in the meanwhile authorizing the use of such testimony. Laws 1895, p. 284. The said act of 1895 does not in express terms purport to apply to then pending causes.

Without discussing whether that statute falls under the ban of the Constitution as an *ex post facto* or a retrospective law, it seems to me, with due respect, that the existing law of Missouri does not sanction the application of such a statutory change in the rules of evidence to criminal proceedings already begun. The general statutes governing the effect of legislation in Missouri appear to disclose an intent to forbid the introduction into pending criminal cases of such an alteration in the law as the said act of 1895 produces. It may be well to mention here certain sections of our statutes bearing on this question:

"Sec. 6594. *Former law, when not revived.*—When a law repealing a former law, clause or provision shall be itself repealed, it shall not be construed to revive such former law, clause or provision, unless it be otherwise expressly provided; nor shall any law repealing any former law, clause or provision be construed to abate, annul or in anywise affect any proceedings had

or commenced under or by virtue of the law so repealed, but the same shall be as effectual and be proceeded on to final judgment and termination as if the repealing law had not passed, unless it be otherwise expressly provided.

"Sec. 6597. *Fine incurred, not affected by repeal of law*.—No offense committed, and no fine, penalty or forfeiture incurred previous to the time when any statutory provision shall be repealed, shall be affected by such repeal; but the trial and punishment of all such offenses, and the recovery of such fines, penalties and forfeiture shall be had, in all respects, as if the provisions had remained in force.

"Sec. 6598. *Actions pending at time of repeal*.— No action, plea, prosecution, civil or criminal, pending at the time any statutory provisions shall be repealed, shall be affected by such repeal; but the same shall proceed, in all respects, as if such statutory provisions had not been repealed, except that all such proceedings had after the time of taking effect of the Revised Statutes shall be conducted according to the provisions of such statute, and shall be in all respects subject to the provisions thereof, so far as they are applicable."

Section 3972, founded on section 6597 but introduced as a new section in the criminal code of procedure of 1879 (R. S. 1879, sec. 3151) indicates the same legislative intent (as to the point of present discussion) manifested in the sections previously quoted, except that it mercifully gives to one accused of crime the benefit of any change of law that may reduce the penalty for the offense.

The exception stated in the latter lines of section 6598 suggests that the intention of the lawgivers was to apply to pending cases any change of procedure that might be made by a general revision of the statutes, as well as to suppress the abuse of permitting interested

parties to procure statutory amendments of the law to fit the needs of their own cases, at times when no close scrutiny of such amendments was likely to occur. The supposed vigilance of those engaged in the decennial revision of the statute law is evidently regarded as a sufficient protection against the danger of legislation for particular cases which section 6598 is designed to prevent.

If this view of the meaning of that section is correct, there can be no doubt that it governs the pending appeal. For the submission of testimony to support the State's case, at a trial upon an indictment for murder, is plainly a part of the "proceedings" in the cause referred to in the section cited.

My interpretation of our laws above mentioned is that they forbid, by clear implication at least, the application of the act of 1895 to the case at bar. Hence my dissent to the judgment of affirmance.

Whatever may be our impression of the merits of the defendant's case, he, nevertheless, is entitled to a fair trial, and to the benefit of every safeguard afforded him by the laws of the land.