[Willis v. The State.]

# Willis *v*. The State.

| 134 | 429 |
| 144 | 53 |
| 144 | 113 |

*Indictment for Embezzlement.*

1. *Embezzlement; sufficiency of indictment.*—An indictment which charges that the defendant "an agent of the Southern Railway Company, a corporation under the laws of the State of Virginia, embezzled or fraudulently converted to his own use money about the amount of three hundred and six dollars, which came into his possession by virtue of his employment as such agent," is not subject to demurrer upon the ground that it fails to allege the ownership of said property, and because it fails to charge that the money alleged to have been embezzled was the property of said railway company.

2. *Same; trial and its incidents; proof of incorporation; construction of act relating thereto.*—The act "to regulate the practice as to the proof of the incorporation of corporations in the trial of criminal cases," relieving the State of the necess'ty of making proof of the incorporation of a corporation mentioned in the indictment, unless the defendant denies the existence of such corporation by sworn pleas, affecting merely the mode of procedure, is applicable to the trial of a criminal case, although the offense charged in the indictment was alleged to have been committed, and the indictment itself was preferred before its passage and the trial of the case is had subsequent thereto.

3. *Same; when election by State not necessary.*—On a trial under an indictment, which charges that the defendant, an agent of a railroad company, embezzled or fraudulently converted to his own use money which came into his possession by virtue of his employment as such agent, the evidence showed that the defendant was a station agent of said railway company, and as such had full charge and control of its business at that station, and was the custodian of all money arising from the sale of tickets, collected all freight and express charges, made all the disbursements at said station and kept the books. The evidence further tended to show that by the statement of false entries upon the books and other practices, the defendant endeavored to conceal his withholding of small amounts of money which came into his possession from time to time by virtue of his employ-

ment, and by such system of falsification he had concealed for a considerable length of time his acts of conversion of the railroad company's money, and that he systematically institued a continuous series of withholdings of the railroad company's money, for the purpose of ultimately acquiring for his own use a large sum. *Held:* That the many acts of conversion by the defendant in such case constituted the *corpus delicti* of the offense charged, and there was not presented a case where the State should be required to elect for which single act of conversion it would proceed to prosecute.

3. *Same; admissibility of evidence.*—On a trial under an indictment charging the defendant, as the agent of a railroad corporation, with embezzlement, the itemized statement made by the railroad company's auditor, from the books kept by the defendant, showing the defendant short in his accounts, when taken in connection with the fact that the defendant paid the amount shown as short, and retained a copy of such statement, is admissible in evidence.

5. *Same; same.*—In such a case, the books kept by the defendant, covering the period he was employed as agent of said railroad company, are admissible in evidence.

6. *Embezzlement; charge to the jury.*—On a trial under an indictment which charges the defendant, an agent of the Southern Railway Company, with embezzlement, a charge is free from error which instructs the jury that "they may take the books of the defendant together with the expense bills and consider them in connection with all the evidence, and that if the books thus considered show beyond a reasonable doubt a shortage and that the defendant knew it was as to money collected by him as agent of the Southern Railway Company, and that said money belonged to said railway company, and that said defendant had knowingly withheld said money and knowingly failed to account for it, then this would be a circumstance tending to show a criminal intent."

7. *Same; same.*—In such a case it is not error for the court in its general charge to instruct the jury that "If the jury was satisfied from the evidence beyond a reasonable doubt that in the county of Cherokee and within three years before the finding of this indictment against the defendant there was a shortage of more than $25 of money collected by the defendant for the Southern Railway Company, that at the time of said collection the defendant was the agent of said railway company, and that said money was the property of said railway company, and that the defendant knew it at the

[Willis v. The State.]

time of the collection, and that defendant collected said money by virtue of his employment as said agent and that the defendant had fraudulently converted it to his own use, that then they must find the defendant guilty as charged in the indictment."

8. *Same; charge as to larceny properly refused.*—On a trial under an indictment for embezzlement, charges which predicate the defendant's acquittal upon the jury believing from the evidence that the defendant was guilty of larceny, are erroneous and properly refused.

9. *Same; charge as to good faith.*—On a trial under an indictment for embezzlement, where there was no evidence tending to show good faith on the part of the defendant in retaining the money of his employer, charges which instruct the jury that it was their duty to consider the evidence of the good faith of the defendant in so obtaining the money of his employer, are erroneous and properly refused.

10. *Same; charge to the jury.*—On a trial under an indictment for embezzlement, charges which instruct the jury that they must believe from the evidence beyond a reasonable doubt that "the defendant embezzled the amount of money charged in the indictment, or some part thereof, and he did it willingly and intentionally and converted it to his own use," are erroneous in the use of the word willfully in conjunction with the word intentional, and are properly refused.

11. *Same; same.*—On a trial under an indictment for embezzlement, where the evidence shows that the embezzlement was composed of continuous acts of wrongful conversion of his employer's money and property by the defendant, aggregating a large sum, and that the defendant had paid back to his employer the amount as shown by the statement of his shortage rendered to him, but the evidence further tended to show that in addition to this amount the defendant was short in his accounts to his employer in another large sum, charges which instruct the jury that they can not convict the defendant, even if they believe from the evidence that he was guilty of embezzlement of the amount which he had paid back to his employer, are erroneous and properly refused.

12. *Same; charge as to doubt.*—On a trial in a criminal case, a charge which instructs the jury "that if there is generated in the minds of the jury by the evidence in the case, or any part of the same, after a consideration of the whole of such evidence, a well founded doubt of the defendant's guilt, then the jury must acquit him," is erroneous and properly refused; a well founded doubt not meaning a reasonable doubt.

13. *Same; same.*—On a trial in a criminal case, a charge which in-

structs the jury "that the burden is on the State to prove defendant's guilt beyond a reasonable doubt, and this degree of proof is not reached unless all reasonable supposition of innocence is excluded," is propery refused.

14. *Same; same.*—On a trial of a criminal case, a charge which instructs the jury "that if the evidence is not so convincing as to lead the minds of the jury to the conclusion that he is guilty, they must find him not guilty," asserts a correct proposition of law and should be given at the request of the defendant.

15. *Argumentative, abstract, confusing and misleading charges* requested by the defendant in a criminal case, are properly refused.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. JAMES A. BILBRO.

The appellant in this case was tried and convicted under the following indictment: "The grand jury of said county charge that before the finding of this indictment, Clarence G. Willis, an agent of the Southern Railway Company, a corporation under the laws of the State of Virginia, embezzled or fraudulently converted to his own use money to about the amount of three hundred and six dollars which came into his possession by virtue of his employment as such agent, against the peace and dignity of the State of Alabma." To this indictment the defendant demurred upon the following grounds: "1. The indictment charges the defendant with embezzlement of about three hundred and six dollars, but fails to allege the ownership of said property. 2. Because the indictment fails to charge that the money which is alleged to be embezzled was the property of the Southern Railway Company." This demurrer was overruled and the defendant duly excepted.

J. W. Hooks, who was introduced as a witness for State, was the traveling auditor of the Southern Railway Company. He testified that he first met the defendant some time in September, 1899, at which time defendant was in charge of the Company's office at Rock Run, Cherokee County, Alabama, which is a station on the said Company's line, and that the defendant was acting as agent for said Company and in charge of

the Company's office at that station. Some time in December, 1899, the defendant took a vacation of about thirty days; that in March, 1900, the defendant was promoted to the Company's station at Oxford, Ala., and in the Fall of 1900, was promoted to the Company's station at Talladega. The witness Hooks also testified to the following facts: While the defendant was acting agent for the Rock Run station he was required to keep the following books: A freight received book, in which he was required to enter a record of the freights received, showing the original way bill number, the station pro number, the weight of the freight, and the charges to be collected; a cash book, in which he was required to keep a record of the collections of freight monies, ticket sales and all other revenues received by the defendant for the Southern Railway Co., and he was required to give a bill of lading for all freights shipped from Rock Run to other points, which way bill should accompany freights. Defendant was required to give a receipt for all freight charges collected due the Southern Railway Co., delivered at his station, this receipt is called an "expense bill," and is made from a printed form furnished by the Company, showing articles of freight delivered and the amount of the freight charged. That the traveling auditor examined the books of the defendant while in charge of the Rock Run station, and they were always correct. The Rock Run station was one of the heaviest one-man stations on the Company's line, and the revenues amounted to from $1,200 to $2,500 per month. The principal consignee at the Rock Run station was the Bass Foundry & Machine Works. The defendant was authorized to make weekly settlements for freights delivered to these Machine Works. The Machine Works settled the freight bills due the Railway Company, with checks, made payable to the order of the Southern Railway Company. These checks were not made payable to the agent. While Hooks was being examined by the State, he was shown a lot of expense bills, which he said were signed by the defendant and in his hand writing. All of these expense bills shown witness were procured from the

28c

Bass Foundry & Machine Works and no one else, and had been turned over to witness by those people. Witness did not know if freight had been delivered on the expense bills, but they were made out on the forms furnished by the Company for the collection of freights, and all showed that they were receipts given to the Bass Foundry & Machine Works for money paid on freights by them to the Railway Company. These receipts were dated at Rock Run, Ala. The State introduced one of said expense bills, showing the collection from said Machine Works of 7 16-100 dollars freight due the Southern Railway Company. That the defendant entered this collection in the cash book as 6 45-100, and that it was collected January 10, 1898, and a remittance was made to the Company on the same day of $228.42, which included only 6 45-100 dollars of this expense bill. The State then offered in evidence this expense bill No. 1. The defendant did not object to expense bill No. 1, if offered for the purpose of showing the defendant's intent in dealing with the funds of his principal. The court held that the State was not required to elect, and that expense bill No. 1 was competent and relevant evidence. To this ruling of the court the defendant excepted. The State then introduced, over the objection of the defendant, another expense bill No. 2, showing a collection from said Machine Works of $3 freight due the Southern Railway Company, and witness Hooks testified that the cash book did not show an entry of this collection. The collection was made on January 17, 1898, and on that day $182.77 was remitted to the Company by the defendant but said remittance did not include said sum of three dollars. The defendant then moved the court to require the State to elect whether it would prosecute as to expense bill No. 1, or No. 2, but the court overruled the defendant's motion and defendant excepted. The State then offered another expense bill No. 3, as follows: No. 3, January 10, 1898, showing a collection from said Machine Works of 91 cents freight due the Railway Company which expense bill was not entered on cash book, but a remittance was made to the Company of $227.81 on the 24th day of January, 1898,

which did not include this expense bill. The defendant objected to the introduction of this expense bill in evidence, except for the purpose of showing the intent of the defendant, and because the State had elected to prosecute on expense bills Nos. 1 and 2, and because the evidence showed that in dealing with expense bills Nos. 1 and 2 there were complete transactions, three remittances having been made by the defendant to the Company, and because the evidence was illegal, irrelevant and immaterial. The court overruled the objections and the defendant then and there excepted. The defendant again movd the court to require the State to elect as to which of said three transactions it would prosecute the defendant, but the court overruled the defendant's motion and defendant excepted. The State then introduced the following expense bills: No. 4, showing a collection on January 28th, 1898, of sixty-three dollars freight collected for the Southern Railway Company. No. 5 on the same day, showing a collection of 5 79-100 dollars freight for the Southern Railway Company. No. 6, dated January 28th, 1898, showing a collection of 6 45-100 dollars freight for the Southern Railway Company. No. 7, dated January 29th, 1898, showing a collection of 3 70-100 dollars due the Southern Railway Company for freight. Witness Hooks stated that the cash book did not show any entry of the above four expense bills. But that a remittance was made to the Company of $312.14 on the 31st day of January, 1898, which did not include these expense bills. The defendant then and there moved the court to exclude the four last named expense bills except for the purpose of showing the intent of the defendant. The court refused to exclude the evidence as requested by the defendant, and the defendant duly excepted.

To each of the following expense bills introduced the defendant made the same objection, separately and severally as to the expense bills numbered 1 to 7, inclusive, which the court overruled, and the defendant then and there excepted. No. 8, which showed a collection by the defendant on February 1st, 1898, of $3.28 freight due the Southern Railway Company, and witness stated that this collection was not shown by the cash book,

[Willis v. The State.]

Expense bill No. 9 was then introduced which showed a collection by the defendant of $7.73 freight due the Southern Railway Company on February 4th, 1898, and that the evidence showed that this expense bill was entered at $4.63, and on February 7th, 1898, a remittance of $220.60 was made by the defendant to the Southern Railway Company, but said remittance did not include the collection of $3.28 of February 1st, 1898, and only $4.63 of the collection made on February 4th, 1898. The defendant then asked the court to exclude all the evidence of expense bill introduced subsequent to the 31st day of January, 1898, at which time the witness had testified the defendant had remitted to the company $312.14 purporting to cover the amount then due the Company, except in so far as the evidence was offered to show the intent of the defendant and to aid the jury in determining whether the defendant embezzled any part of the money of the Company as shown by expense bills of prior date. The court refused to exclude the evidence as requested by the defendant, and the defendant then and there excepted. The State then offered expense bill No. 10 of February 8, 1898, showing a collection of freight due the Company at $1.28, and witness stated cash book did not show this collection, but a remittance was made on February 14th, of $325.38 which did not include the collection of $1.28. The defendant interposed the same objection to the introduction of the last named expense bill as was made to expense bills shown above, and moved the court to exclude the evidence, as this was a complete and separate transaction. The court refused and defendant excepted.

The State introduced a number of expense bills of freight shown to have been collected by the defendant and due the Southern Railway Company, beginning on April 4th, 1898, and ending on April 30th, 1898, and that the defendant made remittances to the Company which did not cover the full amount collected. A number of expense bills were introduced dated from May 3d, to May 31st, 1898, inclusive, showing the collection by defendant of various amounts for freight due the Southern Railway Company, and the defendant remitted to the

company during the month of May four several amounts
the first being made on the 9th and the last on the 31st
of May, 1898. A number of expense bills showing the
freight due the Railway Company and collected by the
defendant were introduced covering the month of June,
1898. The defendant made one remittance to the Com-
pany June 13th, 1898, of $486.98. A number of expense
bills were introduced for July showing freight collected
by the defendant for the Railway Company but not re-
mitted. The defendant made a remittance on July 11,
1898, of more than four hundred dollars which did not
include the full amount collected. Expense bills were
then introduced showing collections of freight by the
defendant due the Railway Company during the month
of August, 1898, and that a remittance was made on
August 31st of nearly $700 dollars, which did not in-
clude all the amounts collected on expense bills intro-
duced. Four expense bills were introduced dated Sep-
tember 10th, 1898, to September 29th, inclusive, show-
ing collection by the defendant of a total of $5.63 due
the Company, and remittance was shown to have been
made to the Company by the defendant on September
5th, 1898, of $240.18. One expense bill was introduced
for November, 1898, showing a collection of 25 cents
which witness stated was not entered on the cash book,
and a remittance was made November 7th, 1898, by the
defendant to the Company of $222.98. An expense bill
was introduced for December 5, 1898, showing a col-
lection of $5.64 of freight due the Company and col-
lected by the defendant, and a remittance was made to
the Company by the defendant on December 12 of
$620.85, and witness stated that this expense bill was
not remitted. The State introduced an expense bill for
$8.98, and on January 7, 1898, an expense bill for $12.30,
and on the 6th an expense bill for $3.12, which witness
Hooks testified were for a smaller amount than was col-
lected. On February 6, 1899, and 13, respectively, the
defendant remitted to the Company two amounts two
amounts aggregating more than $800. Expense bills
were introduced in evidence for June and November,
1899, and February 2, 1900, showing collections of
freight due the Railway Company by the defendant and

[Willis v. The State.]

remittances made to the Company by the defendant for July and November, 1899, and witness Hooks testified that the full amounts of these collections were not shown to have been entered by the defendant in the cash book, and remitted to the company.. The State introduced evidence tending to show that remittances as shown by receipts Nos. 32 to 72, inclusive, did not include any part of the amounts collected on expense bills except amounts which the evidence showed had been entered on the cash book as above stated, and as to the balance of the receipts, freights collected by the defendant for the Railway Company and for the sale of passenger tickets on the road of said Company, and for the amounts entered on the cash book. Witness Hooks further testified that as to receipts numbered 36 to 70, inclusive, that he, in December, before the indictment was found against the defendant, presented to the defendant an itemized statement of freights collected by him while he was agent at Rock Run amounting to $554.45. Said statement was for freight due the Company and was for other freights than those specified in expense bills set out and unnumbered from 1 to 7, inclusive, and the witness stated further that when he presented the defendant the statement made up in checking him up at Rock Run that the defendant made a copy of it, paid it and said he was glad it had passed off that way, and that witness told the defendant that there was other matters at the Rock Run station to be taken up, and defendant expressed a willingness to pay them when presented. And that defendant was assured by witness when he paid the $554.45 that he could examine the books of the Railway Company and if error was found it would be corrected. The State offered this statement in evidence, and the defendant objected because illegal, irrelevant and immaterial, and because made by the witness, Hooks, and because it was not the original entry, but showed it was a copy of an alleged original entry and not made in the presence of the defendant. The court overruled the defendant's objection and the defendant excepted.

[Willis v. The State.]

Witness Hooks, on cross examination, testified that the Railroad Company had never demanded of the defendant the three hundred and six dollars which he is charged with embezzling or any part of it, before or since the indictment, and if they had done so it was not within his knowledge. The books and records of the Rock Run station kept by the defendant, beginning January 1, 1898, and ending in March, 1900, were then offered in evidence, to which the defendant objected. The court overruled the objection and the defendant excepted. There was evidence offered by the State through witnesses Curry and Hamlin, who were employees of the road, tending to show that they, at the solicitation of the defendant, had entered into an agreement with him by which said Hamlin, agent at Oxford, Ala., and Curry, bill clerk at Anniston, Ala., were to ship freight to Rock Run on memorandum way bills and the money thus extorted from the road, to be divided among them, and that as a result of this conspiracy both Hamlin and Curry received some money from the defendant.

The defendant denied that he owed the Company one cent now or at the time the indictment was found, and there was evidence tending to show that he had remitted the Company every cent collected and covered by the 72 expense bills introduced in evidence, and that the defendant had authority to make weekly settlements with the Bass Foundry & Machine Company who paid their freight bills in checks drawn to the order of the Southern Railway Company; the defendant had coming to him monthly a salary paid by the Bass Foundry & Machine Company, and commissions by the Southern Express Company, besides the salary paid him by the Railroad Company; and the defendant had remitted to the Company every dollar that he received on the Company's account. Defendant denied and attempted to explain all the discrepancies which were shown by the books and papers introduced in evidence, but stated that the books had been kept from him, and that he had had no opportunity of examining them in order to explain any apparent discrepancies. The defendant denied the alleged agreement with Hamlin and Curry, and stated that the only goods shipped to him in the

way indicated by them was individual freight and that was done with the approval of the auditor and the witness stated that the Company was now due him $190 unpaid salary. W. H. Burnett and William Siglin testified to the good character of the defendant.

After the introduction of all the evidence, the bill of exceptions contains the following recital: "This being all the testimony in the case, the court in its oral charge to the jury stated that as the defendant had not interposed a sworn plea denying that the Southern Railway was a corporation under the law, the State was required to prove this allegation in the indictment."

The defendant separtely excepted to this part of the court's oral charge, and also separately excepted to the following portions of the court's oral charge: (1.) "That they may take the books of the defendant together with the expense bills and consider them in connection with all the evidence, and that if the books thus considered show beyond a reasonable doubt a shortage, and that the defendant knew it was as to money collected by him as agent of the Southern Railway Company, and that said money belonged to said Southern Railway Company, and that said defendant knowingly withheld said money and knowingly failed to account for it, then this would be a circumstance tending to show a criminal intent." (2.) "If the jury was satisfied from the evidence beyond a reasonable doubt that in the county of Cherokee and within three years before the finding of this indictment against the defendant there was a shortage of more than $25 of money collected by the defendant for the Southern Railway Company; that at the time of said collection the defendant was the agent of said Railway Company, and that said money was the property of said Railway Company, and that the defendant knew it at the time of the collection, and that defendant collected said money by virtue of his employment as said agent, and that the defendant had fraudulently converted it to his own use, that then they must find the defendant guilty as charged in the indictment."

The defendant requested the court to give to the jury the following writtten charges, and separately excepted

[Willis v. The State.]

to the court's refusal to give each of them as asked:
(1.) "The court charges the jury that if the jury believe
all the evidence in this case, they must find the defend-
ant not guilty.' (2.) "The court charges the jury that
if from the evidence in this case they should be con-
vinced beyond a reasonable doubt that the defendant
did wrongfully and fraudulently take and carry away
goods or money, the personal property of the Southern
Railway Company, with the felonious intent to con-
vert it to his (defendant's) own use, this would not
make the defendant guilty as charged in the indictment,
and it would be the duty of the jury to return a verdict
of not guilty." (3.) "The court charges the jury that it
is their duty to consider the evidence of the good faith
of the defendant in retaining the money of the Railway
Company, if they believe from the evidence that he did
retain any of it, in connection with all the other evi-
dence in the case; and if they are in reasonable doubt
that he retained the money with fraudulent intent they
shall find the defendant not guilty." (4.) "The court
charges the jury that if they believe from the evidence
that the defendant obtained possession of the money al-
leged to have been embezzled with a felonious intent ex-
isting at the time to appropriate or apply the property
to his own use he would be guilty of a tresspass and
larceny, but cannot be convicted on a charge of embez-
zlement." (5.) "The court charges the jury that if from
all the evidence in this case they should believe be-
yond reasonable doubt that the defendant did wrong-
fully and fraudulently take and carry away the money
alleged to have been embezzled, and belonging to the
Southern Railway Company with felonious intent to
convert it to his (defendant's) own use, this would not
authorize a conviction under the indictment; and it
would be the duty of the jury to acquit the defendant
unless they should further find from the evidence that
he has committed the offense of embezzlement." (6.)
"The court charges the jury that they must believe from
the evidence beyond a reasonable doubt that the defend-
ant embezzled the amount of money charged in the in-
dictment, or some part thereof, and he did it willfully
and intentionally and converted it to his own use."

[Willis v. The State.]

(7.) "The court charges the jury, that if the evidence is not so convincing as to lead the minds of the jury to the conclusion that he is guilty, they must find him not guilty." (8.) "The court charges the jury if they believe the evidence, they must acquit the defendant." (9.) "The court charges the jury that they may look to all the circumstances relative to the payment of the $554.45 in determining the good faith of the defendant in handling the money of his principal, and should they fail to show beyond a reasonable doubt that the defendant acted with criminal intent, they should acquit him." (10.) "The court charges the jury that they can not convict the defendant even should they believe from the evidence that he is guilty of embezzlement of the whole or any part of the $554.45 paid the Southern Railway Company at the time testified to by witness Hooks and defendant." (11.) "The court charges the jury that they can take into consideration the fact, if the evidence shows it to be a fact, that the defendant tendered or offered to pay his principal all that might be due if ascertained, in determining whether or not there was a criminal intent in defendant's action; and if the jury are not convinced beyond all reasonable doubt and to a moral certainty that the defendant retained money, the property of the Southern Railway Company with a criminal intent, they should acquit him." (12.) "The court charges the jury that they must believe from the evidence beyond a reasonable doubt that the defendant embezzled the amount of money or a part of said amount charged in the indictment and that he did it willfully and intentionally, and converted it to his own use, before they can convict him." (13.) "The court charges the jury that they can not convict the defendant unless the evidence satisfies them beyond all reasonable doubt that the defendant embezzled money of the Southern Railway Company; and if the evidence should convince them that the defendant embezzled checks and property of said Railway Company, but that no money was embezzled, then they can not convict him." (14.) "The court charges the jury that unless the State has priven to the jury beyond all reasonable doubt that the

defendant embezzled or fraudulently converted to his own use some part of the money alleged in the indictment the property of the Southern Railway Company; and if the defendant has raised in the minds of the jury a reasonable doubt growing out of the evidence as to whether he received said money or any part thereof, and if the jury are satisfied beyond a reasonable doubt, that he received said money or any part thereof as such agent but the jury have a reasonable doubt as to whether defendant fraudulently converted said money or embezzled it, then that would be such a reasonable doubt that the law speaks of and they must acquit him." (15.) "The court charges the jury if there is generated in the minds of the jury by the evidence in the case or any part of the same, after a consideration of the whole of such evidence, a well-founded doubt of defendant's guilt, then the jury must acquit him." (16.) "The court charges the jury that the provision of the law is that a conviction should not be had on circumstantial evidence unless it excludes [to] a moral certainty every reasonable hypothesis but that of defendant's guilt. If the facts can be reconciled reasonably with any theory of the case consistent with the defendant's innocence, then the proof does not make out a case as the law requires, no matter how strong the circumstances, if they can be explained reasonably and consistently with the defendant's innocence, then the law demands an acquittal at your hands." (17.) "The court charges the jury that before the jury can convict the defendant, they must be satisfied to a moral certainty, not only that the proof is consistent with defendant's guilt but that it is wholly inconsistent with every rational conclusion, and unless the jury are so convinced by the evidence of defendant's guilt that they would each venture to act upon that decision in matters of the highest interest, they must find the defendant not guilty." (18.) "The court charges the jury that if the jury have a reasonable doubt as to whether defendant owed the Southern Railway Company any monies at the time the indictment was found, then the jury must find the defendant not guilty." (19.) "The court charges the jury that the

defendant is not being tried for what arrangements defendants had with Curry or what monies were paid to Curry, and if the jury are not reasonably satisfied that defendant embezzled the $306, or some part thereof, then they must find the defendant not guilty." (20.) "The court charges the jury that the defendant is not being tried for the $554.45 transaction, and if the jury have a reasonable doubt that the defendant embezzled the $306, or some part thereof, then they must find the defendant not guilty." (21.) "The court charges the jury that because the State failed to prove that the Southern Railway Company was a corporation, and because at the time this indictment was found it was necessary for the State to prove this fact, that the act of March 4th, 1901, relieving the State of proving this fact, does not apply to this case, and is unconstitutional and void in this case, and hence their verdict must be for the defendant." (22.) "The court charges the jury that the defendant is not being tried for failing to do his duty as to entries in the cash book, and if the jury have a reasonable doubt as to whether defendant embezzled the $306, or any part thereof, then they must find the defendant not guilty." (23.) "The court charges the jury that if the jury believe from all the evidence in this case that the defendant collected money for the Southern Railway Company which he has failed to pay over to said company, and if the jury further believe from the evidence in this case that the defendant collected his salary and commissions due him from the furnace company, express company and Western Union Telegraph Company and remitted said salary and commission to the Southern Railway Company, that the defendant honestly and in good faith retained said money so collected for said Southern Railway Company to reimburse himself for such salary and commissions, that they must find the defendant not guilty." (24.) "The court charges the jury that the burden is on the State to prove defendant's guilt beyond a reasonable doubt, and this degree of proof is not reached unless all reasonable supposition of innocence is excluded." (25.) "The court charges the jury that they may look to the evidence to determine the amount of business and work

done at Rock Run; and if the testimony shows a heavy business they may look to that fact as to whether the defendant acted in good faith or bad faith with his principal or whether it may not be on account of errors." (26.) "The court charges the jury that the defendant is not being tried for what arrangements the defendant had with R. C. Hamlin, and if the jury have a reasonable doubt that defendant embezzled $306, or some part thereof, then they must find him not guilty." (27.) "The court charges the jury that it is their duty to consider the evidence of the defendant's good faith in retaining the money of his principal, if from the evidence they believe he did retain any of it in connection with all the other evidence in the case; and if the jury has a reasonable doubt that the defendant retained the money with fraudulent intent the jury must give the defendant the benefit of that doubt and find him not guilty." (28.) "The court charges the jury that if from the evidence they are satisfied beyond a reasonable doubt that the defendant is guilty of the commission of a crime, but have a reasonable doubt of whether he is guilty of embezzlement or larceny, they shall give the defendant the benefit of such doubt and acquit him." (29.) "The court charges the jury that if the jury have a reasonable doubt as to whether Willis retained any part of the $306, if there was any part of the $306 retained, whether such money was retained in bad faith, then the jury must find the defendant not guilty." (30.) "The court charges the jury that if the jury are not satisfied beyond a reasonable doubt that C. G. Willis, as agent of the Southern Railway Company, received the 306 or some part thereof, that said money is now due the Southern Railway Company, and that the defendant withheld or secreted this money with the intent to convert it to his own use, then the jury must find the defendant not guilty." (31.) "The court charges the jury that in order to convict the defendant they must believe from the evidence that the State has shown beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis that the defendant was at the time of the alleged embezzlement an agent of the Southern Railway Company, that the Southern Railway Company is a cor-

poration organized under the laws of the State of
Virginia, and the property alleged to have been embez-
zled was money and property of the said Railway Com-
pany, that said money was fraudulently converted or
appropriated by the defendant, that the money was in
the possession of the defendant at the time of the con-
version and that no tresspass was committed by the
defendant in taking it, that the money came into the
possession of defendant and was held by him by virtue
of his being an agent of said railway company, that the
defendant's dealing with the money constituted a con-
version or appropriation of the same, that there was a
fraudulent intent to deprive the owner of the money;
and if the jury should have a reasonable doubt from all
the evidence that the State has shown these propositions
all to be true, they can not convict the defendant." (32.)
"The court charges the jury that before the State can
show a conviction in this case, the jury must believe
from the evidence beyond a reasonable doubt that the
Southern Railway Company is a corporation organized
under the laws of the State of Virginia." (33.) "The
court charges the jury that they must not convict the
defendant unless the evidence shows beyond a reason-
able doubt that the Southern Railway Company is a cor-
poration organized under the laws of the State of Vir-
ginia, and that the money alleged to have been embez-
zled was the property of the Southern Railway Com-
pany, and came into the hands of the defendant by
reason of his agency." (34.) "The court charges the jury
that the burden is on the State to show that the South-
ern Railway Company is a corporation, and if the State
has failed to do so, the jury must acquit the defendant."
(35.) "The court charges the jury that before they can
convict the defendant the evidence must show beyond a
reasonable doubt that the defendant embezzled money
of the principal during the month of July, 1898." (36.)
"The court charges the jury that they must believe from
the evidence beyond all reasonable doubt and to a moral
certainty and to the exclusion of every other reasonable
hypothesis, that the defendant is guilty of embezzlement
of money of his principal at some time during the

months of January, February or March, 1898, before
they can convict him." (37.) "The court charges the jury
that before they can convict the defendant the evidence
must show beyond a reasonable doubt that the defendant
embezzled money of his principal during the month of
April, 1898."

Charges numbered from 38 to 59 inclusive are the
same as charge numbered 37, with the exception of the
month referred to, and each of said charges refers to the
embezzlement charged during the months from May,
1898, to March, 1900.

The verdict of the jury was as follows: "We the
jury find the defendant guilty as charged in the indict-
ment, and find the amount embezzled or fraudulently ap-
propriated to be more than twenty-five dollars." Upon
this verdict there was a judgment of conviction, and the
defendant was sentenced to the penitentiary for three
years. From this judgment the defendant appeals.

Boykin & Lee and P. E. Culli, for appellant.—The
first expense bill introduced in this case by the State
showed a collection by the defendant of $7.15 freight
due the Southern Railway Company, and collected Jan-
uary 10th, 1898. It was entered on the cash book as
$6.45, and on the same day, January 10th, 1898, the de-
fendant remitted to the said Railway Company the sum
of $228.42 which remittance only included $6.45 of the
said $7.15 collected. This was a complete transaction.
The retention by the agent of a part of the collection
made for his principal when the remittance was made,
raises the presumption that the agent intended to con-
vert it to his own use, and the court should have granted
the motion made by the defendant, and compelled the
State to elect on this transaction, and all evidence of
other transactions, complete in themselves, should have
been admitted but limited as requested by the defendant
to the purpose of shedding light on this original trans-
action, that the intent of the defendant might be ascer-
tained by the jury.—*Smith v. State,* 52 Ala. 384;
*Sullivan v. State,* 68 Ala. 599; *Compton v. State,* 30
Ala. 502; *Stanley v. State,* 88 Ala. 154; *Reeves*

*v. State*, 96 Ala. 31; *Lang v. State*, 97 Ala. 41; *Carl v. State*, 125 Ala. 89.

The court should have sustained the objection made by the defendant to the introduction in evidence of the memorandum tending to show a shortage of $554.45, as testified to by witness Hooks. There was no evidence offered by the State to show when the defendant collected the amount of shortage claimed by the statement introduced, whether collected within three years of the finding of the indictment does not appear, and the statement shows that it is secondary evidence, and no effort made or predicate laid for its introduction.—*Walker v. State*, 117 Ala. 42; *Rice v. Schloss & Kahn*, 90 Ala. 416; *Hirschfelder v. Levy*, 69 Ala. 351.

Charge No. 7 has been approved by the court and should have been given. *Walker v. State*, 117 Ala. 42.

The court erred in refusing the other charges requested by the defendant.—*Carr v. The State*, 104 Ala. 43; *Caldwell v. State*, 55 Ala. 133; *Bradford v. Barclay*, 42 Ala. 375; *Kelly v. State*, 72 Ala. 244; *Cooper v. State*, 86 Ala. 610; *Eggleston v. State*, 30 So. Rep. 582; *Dennis v. State*, 112 Ala. 65; 12 Am. & Eng. Ency. Law (2d. ed.), 527; Black on Intrep Laws, 248; *Duncan v. Missouri*, 152 U. S. 382; *King v. Missouri*, 107 U. S. 221; *Hart v. State*, supra.

CHAS. G. BROWN, Attorney-General, for the State. It was not necessary for the State to prove the incorporation of the Southern Railway Company. The act of the Legislature approved March 4, 1901, rendered this unnecessary. The title and body of the act are sufficiently comprehensive to include offenses before and after its enactment. The very language used shows that it has reference to trials for the offense and not to the time of the commission of the offense, and the statute is general and applies to the trial of all criminal cases. It furnishes merely a rule of practice —a rule of pleading and procedure applicable alike to trials for offenses committed before and after its pass-

[Willis v. The State.]

age.—*Robinson v. State,* 84 Ind. 453; *Jacquins v. Commonwealth,* 9 Cushing, 280-81.

There is no merit in the demurrer to the indictment. *Washington v. State,* 72 Ala. 272.

The defendant was the agent of the Railroad Company—its *alter ego*—had full charge of business, collected all monies, disbursed all monies, kept all the books, and from the evidence it is manifest that the defendant formed an adroit and continuous scheme for a continuous series of acts of embezzlement, and in such case a continuous series of conversions of money in pursuance of such scheme continuing for years and within the statute of limitations constituted but one offense.—*Brown v. State,* 18 Ohio State, 497; *Ker v. People,* 110 Ill. 627; *Carl v. State,* 125 Ala. 91.

TYSON, J.—The demurrer to the indictment was correctly overruled.—§ 4659 of Crim. Code; *Washington v. The State,* 72 Ala. 272; *Reeves v. The State,* 95 Ala. 31; *Walker v. State,* 117 Ala. 42.

The indictment alleges that defendant, "an agent of the Southern Railway Company, a corporation under the laws of the State of Virginia, embezzled," etc. At the time of the commission of the alleged offense and at the time of the finding of the indictment, upon a trial then had, the burden would have been upon the State to make proof of the incorporation of the Southern Railway Company as alleged. However, before a trial was had, the general assembly passed the act, approved March 4, 1901, entitled "An act to regulate the practice as to the proof of the incorporation of corporations in the trial of criminal cases." By this act the State is relieved of the necessity of making proof of incorporation mentioned in an indictment, complaint or information, unless the defendant before entering upon the trial denies the existence of such corporation by a sworn plea. It is contended that the provisions of this act had no application to the trial of this cause, because the offense charged in the indictment was alleged to have been committed before its passage and that it contains no provision making it retroactive. The lat-

ter proposition may be conceded and yet if the provisions of the act effect merely the mode of procedure, it did govern as to the matter of proof of incorporation upon this trial. That such is the nature and character of the act and that the enforcement of it deprives the defendant of no substantial right will clearly appear upon the principles declared in the following cases: *Perry v. The State,* 87 Ala. 30; *South v. The State,* 86 Ala. 617; *Hanover Nat. Bank v. Johnson,* 90 Ala. 552; *Robinson v. The State,* 84 Ind. 452; *People v. McDonald,* 5 Wyoming, 526; *Commonwealth v. Hall,* 97 Mass. 570; *Thompson v. Missouri,* 171 U. S. 380. See also 12 Am. & Eng. Ency. Law (2d ed.), 533.

The next important question raised upon the record is, whether the prosecution could be compelled to elect to prosecute for one particular act of embezzlement. The evidence shows that the defendant was the station agent of the Railway Company, and as such had full charge and control of its business at that station; was the custodian of all money arising out of the sale of tickets, collected all freight and express charges, made disbursements, and kept the books. Furthermore, the evidence tended to show that by a system of false entries upon the books, and other dubious practices, he endeavored to conceal his withholding of small sums of money which came into his possession from time to time by virtue of his employment. And by a system of falsification he managed to conceal for a considerable length of time his acts of conversion of his employer's money. The tendency of the evidence strongly supports the theory that the defendant systematically instituted a continuous series of withholding of his principal's money for the purpose of acquiring for his own use, ultimately, a large sum. Where this is the case, the doctrine of election does not apply, since the series of acts would constitute but one offense and each separate act would not be separate and distinct offenses. *Carl v. The State,* 125 Ala. 104; *Brown v. The State,* 18 Ohio St. 513. In the latter case cited, in response to the contention "that the evidence shows there was in fact an infinite number of separate and distinct acts

of embezzlement and the jury could only properly find the amount embezzled at one time—or at most only the amount embezzled at four several times, corresponding with the four counts of the indictment—whereas they have found the aggregate amount," the court said: "The answer is that the evidence shows a continuous series of conversions of the money, in pursuance of a conspiracy. Such evidence is sufficient to support a finding by the jury of the aggregate sum, as the amount of a single embezzlement. It was in fact and in law a single embezzlement. Were it otherwise, the particular conversions could never be ascertained or proven, and there would have to be, in some cases, almost as many counts in the indictment as there were dollars in the money embezzled."

A strikingly analogous case to the one in hand, involving the question now under consideration, where the embezzlement was under a statute identical in substance with ours, was reviewed by the Supreme Court of Illinois. The court speaking to this question said: "It is insisted the evidence shows a cumulation of offenses, and for that reason it was error in the court to deny defendant's motion to compel the prosecution to elect upon what alleged act of larceny or embezzlement a conviction would be asked. The court, by its ruling, submitted all the evidence touching the embezzlement of funds and securities by defendant, to the jury and it is not perceived how it could properly have done otherwise. Embezzlement is a crime defined by statute, and it was entirely competent for the legislature to declare what acts would constitute the crime, and fix the measure of punishment. One element that enters into the statutory definition of embezzlement, is the fiduciary or confidential relation. Such relations afford the amplest opportunity to misappropriate money, funds and securities, and often present great difficulty in proving exactly when and how it was done. This is especially true with regard to clerks and confidential agents in banks, or other corporations or firms doing a large business, and who are entrusted, in whole or in part, with the care or custody of funds, securities and property belonging

to banks or other corporations, or to a co-partnership. It is difficult, in such cases, if at all possible, to prove with certainty when or how the embezzlement was effected. It is, of course, done with a view to avoid detection, and the confidential relations existing ward off suspicion. Embezzlement may, and most often does, consist of many acts done in a series of years, and the fact at last disclosed that the employer's money and funds are embezzled is the crime against which the statute is leveled. In such cases, should the prosecution be compelled to elect it would claim a conviction for only one of the many acts of the series that constitute the *corpus delicti,* it would be doubtful if a conviction could be had, [under section 4659 and 4660 of Crim. Code] against a clerk in a bank or other corporation, or a co-partnership, although the accused might be conceded to be guilty of embezzling large sums of money in the aggregate. It might be otherwise [under section 4661 of Crim. Code] where distinct sums of money or articles of personal property are or may be delivered to the accused on different occasions wide apart. Such distinct acts might very readily be susceptible of direct proof, for the act of delivery implies actual knowledge in some one who could be a witness. But no such opportunity is afforded to make direct proof as to the acts done, [under sections 4659 and 4660] defining embezzlement. The body of the crime consists of many acts done by virtue of the confidential relations existing between the employer and the employe, with funds, moneys or securities over which the servant is given care or custody, in whole or in part, by virtue of his employment. The separate acts may not be susceptible of direct proof, but the aggregate result is, and that is embezzlement."—*Ker v. The People,* 110 Ill. 645.

It will be noted that in the above quotation we have substituted references to the sections of our Criminal Code in the place of those cited in the opinion copied from. Our statutes being substantial copies of those referred to in the opinion, we deemed it *apropos* to do so, in order to give point to the language quoted.

It is clear to us that the motion to require the prosecution to elect was properly denied.

There was clearly no error in the admission in evidence of the itemized statement made by witness Hooks from the books kept by defendant showing a shortage by him in his accounts of $554.45 which he had not paid to his principal, when taken in connection with the fact that he paid the $554.45 and made and retained a copy of the statement.—*Lang v. The State*, 97 Ala. 46.

Under the principles announced by us, it was entirely proper to admit the books kept by defendant covering the period he was employed as agent at Rock Run Station, in order that the jury might ascertain from them the aggregate amount he owed the company when he gave up his position as agent at that point.

We have examined carefully that portion of the oral charge of the court excepted to and find no fault with it.

Written charges refused to defendant numbered 1, 8, 21, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58 and 59 were not in accord with the views we have declared and, therefore, properly refused.

Larceny not being charged in the indictment, charges 2, 4, 5 and 28 were improper for this reason, if for no other.

Charges 3 and 27 assumed that there was evidence of good faith on the part of defendant in retaining his employer's money. Besides they were in substance given in charge 72.

Charges 6 and 12 in the use of the word "willfully" in conjunction with the word "intentionally" were bad and were calculated to mislead the jury.

Charges 10, 18 and 30 were doubtless intended to assert that the State had elected to prosecute for the $306, which the evidence tends to show was embezzled exclusive of the $554.45 paid back by defendant to the Railway Company. They were impotent to accomplish this result, since the evidence as to the conversion by defendant of either of these sums was competent as showing scienter in the prosecution for the embezzlement of the one or the other. On the evidence as presented by the rec-

ord, it is impossible to determine for which of the sums converted, the State was prosecuting for, as it was not bound to prove the exact amount charged in the indictment.    If proof was made that $25 or more was embezzled, the crime is punishable as grand larceny is punished, and of course it is of no consequence whether the $25 constituted a part of the $306 or the $554.45, in the absence of some action on the part of defendant upon the introduction of the evidence showing the conversion of one or the other of the sums invoking a ruling of the court as to the end of limiting its effect as tending to prove only guilty knowledge.

The charges were bad independent of the considerations adverted to above.

Charges 11, 16, 19, 22, 25 and 26 were argumentative, and this is sufficient for their condemnation without more.—*Dennis v. The State*, 112 Ala. 68.

Charge 13 was abstract.    So was charge 14 in so far as the question of the receipt by defendant of the money or some portion of it.    Besides the charge was in substance and legal effect duplicated in charges numbered 69 and 70 given at defendant's request.    And again no burden was on the State to prove property in the money in the Railway Company.

If by the use of the words "a well founded doubt" in charge 15, it was meant to express "a reasonable doubt," that charge finds duplication in substance and legal effect in a number of given charges.    On the other hand, if the expression employed does not mean "a reasonable doubt," the charge was correctly refused.

Charge 17 was condemned in *Amos v. The State*, 123 Ala. 50.

Charge 23 was confusing and misleading. It was not shown by the evidence with any degree of definiteness how much of defendant's salary and commission he remitted to the Railway Company—whether the total amount of his salary and commission remitted approximated the amount withheld by him of the company's money is left to conjecture.

Charge 24 was substantially given in 65.    Besides the charge is of doubtful propriety in the use of the word

"supposition."—*Baldwin v. The State*, 111 Ala. 15; 1 Mayfield's Dig., 176 §§ 239, 240; *Bones v. The State*, 117 Ala. 138.

Charge 29 is confused and obscure.

Charge 7 should have been given.—*Walker v. The State*, 117 Ala. 42.

The verdict rendered was not a special one, but found "the defendant guilty as charged in the indictment."— *Huffman v. The State*, 89 Ala. 33.

Reversed and remanded.