The State v. Jackson, *Appellant.*

1. **Practice**: WEIGHT OF EVIDENCE : PROVINCE OF JURY. The jury are, as a rule, the exclusive judges of the weight and probative force of the evidence.

2. **Practice, Criminal**: INSTRUCTION. An instruction, requiring the jury to find the issues on the evidence introduced by the state, is not objectionable, when attention is called to the other instructions, and the jury are directed to acquit the defendant, if they have a reasonable doubt of his guilt upon a view of the whole case.

3. ———: ———. A defendant will not be heard to complain of an error in an instruction given at his own request. No judgment will be reversed for an error committed at the instance or in favor of a defendant. (R. S. 1879, sec. 1821.)

4. ———: VERDICT. Upon a trial on an indictment for murder in the first degree, where instructions are given upon both murder in the first and second degrees, a general verdict of guilty as charged in the indictment is insufficient. The statute, requiring the jury to specify in their verdict the degree of the crime found, is mandatory. (Affirming *State v. Montgomery,* 98 Mo. 399.)

*Appeal    from    Gasconade    Circuit    Court.*—HON. RUDOLPH HIRZEL, Judge.

REVERSED AND REMANDED.

THE tenth instruction given by the court is as follows :

"The court instructs the jury that in this case the state attempts to convict the defendant upon circumstantial evidence, and that, before the jury can find defendant guilty, they must believe from the evidence that the facts and circumstances proved by the state are inconsistent with any other reasonable or rational theory, and, if after considering the evidence there is a reasonable doubt in the minds of the jury as to defendant's guilt, they should give him the benefit of the doubt, and find him not guilty."

*J. C. Kiskaddon* and *James Booth* for appellant.

(1) The evidence is not sufficient to support a conviction. (2) The court erred in refusing to give the instructions asked by defendant. (3) The court erred in giving instructions. (4) The court omitted to give instructions it ought to have given.

*John M. Wood*, Attorney-General, for the State.

(1) The instructions given upon the trial, with the exception of instruction number 10, are copies of instructions given in the former trial of this cause, and approved by this court in the case of *State v. Jackson*, 95 Mo. 623. (2) The record shows that instruction number 10 was especially asked for by defendant's counsel, and was given at their request. The instruction announces the correct rule, and corrects the error of the instruction on that question in the former trial. *State v. Jackson, supra.*

SHERWOOD, J.—This cause has been in this court before, and is reported in 95 Mo. 623. A change of venue having been awarded, the defendant was tried in Gasconade county, resulting in his being adjudged guilty of murder in the first degree, and sentenced accordingly.

I. When this cause was here on a former occasion, it was claimed, as it is now, that the evidence was insufficient to authorize a conviction, but, after a most patient examination of the evidence at that time, the conclusion was reached that the evidence was of such a character as to place it beyond our province to interfere. The evidence in the present record differs in no essential particular, no particular which should have caused the triers of the fact to have returned a different verdict; and they, speaking within bounds, were the exclusive

judges of the weight and probative force of the evidence. Our ruling on that point must therefore be the same as formerly announced.

II.   As to the testimony of Hartley, a certain objectionable feature which it contained at the former trial, to-wit, that defendant told him that upon seeing the account of the murder, and that he was accused of it, "it wrecked his mind, etc., *so he went to stealing horses to pacify his mind,*" and which I regarded, and still regard, as wholly inadmissible, was eliminated from the second trial as well as other evidence which this court held admissible, and consequently such evidence is not before us for our consideration; and the same line of remark is applicable to objectionable language formerly used by the prosecuting attorney.

III.   The instructions given, speaking of all of them but the tenth, which will be presently touched upon, seem, when considered in connection with the tenth instruction, to have instructed the jury "upon all questions of law arising in the case which were necessary for their information in giving their verdict."

The tenth instruction, it will be noticed, is numbered the same as one deemed erroneous by two of the members of this court, and now I am informed that *three* of my associates regarded the instruction, as formerly given, in that light; but such objections as were formerly urged against that instruction do not now apply, as those objections have been purged by the proper amendments.

It is objected, however, that the present instruction, numbered 10, is faulty in that "it required the jury to find the issue on the evidence introduced by the *state*, instead of all the evidence in the case."   But this must be regarded as a mere verbal criticism, when attention is directed to the other instructions, which required the jury to find the defendant guilty upon the evidence beyond a reasonable doubt, and told them that, if, upon

.a view of the whole case, the jury had a reasonable doubt of the guilt of the defendant, they should acquit him.

Besides, instruction number 10 was especially asked for by the counsel for the defendant, as the bill of exceptions shows, so, even if there was error in it, such error was cured by reason of this action of the defendant's counsel, and by virtue of the provisions of section 1821, Revised Statutes, 1879, which forbid any judgment to be reversed "for any error committed at the instance or in favor of the defendant."

IV. If the foregoing alleged errors were all the record herein contained, the judgment would have to stand affirmed; but there is a remaining point to be touched upon. The verdict in this cause was the following: "We the jury find the defendant guilty in manner and form as charged in the indictment. E. W. WILD, foreman."

Section 1234 of our statute (R. S. 1879), which governs this cause is as follows: "Upon the trial of an indictment for murder in the first degree, the jury must inquire, and by their verdict ascertain, under the instructions of the court, whether the defendant be guilty of murder of the first or second degree, and [persons convicted of murder in the first degree shall suffer death; those convicted of murder in the second degree shall be punished by imprisonment in the penitentiary not less than ten years]."

This section was amended to its present shape in 1879, from what was General Statutes, 1865, page 778, section 3, and the brackets enclose such portion as was the original section. A section very similar in its operation to the one just quoted was Revised Statutes, 1845, page 883, section 1, which reads as follows: "Upon the trial of any indictment for any offense, where by law there may be conviction of different degrees of such offense, the jury, if they convict the defendant, shall

specify in their verdict of what degree of the offense they find the defendant guilty." In a subsequent revision, this section was amended so as to read: "Upon the trial of any indictment for any offense, where, by law, there may be conviction for different degrees of such offense, the jury, if they convict the defendant of a degree of the offense inferior to the offense alleged in the indictment, shall specify in their verdict of what degree of the offense they find the defendant guilty." The section as amended is now section 1927, Revised Statutes, 1879.

And upon that section thus changed, it has been ruled that, while, under the former law, the section as it stood before the amendment, it would have been necessary for the jury to have specified the degree of the offense of which the defendant was convicted (referring to *State v. Upton*, 20 Mo. 397), yet that, in consequence of the statutory change, a verdict was good though it did not specify the degree of the offense charged, for that under the amendment such specification was unnecessary where the conviction was for a degree of offense *inferior* to that charged. *State v. Matrassey*, 47 Mo. 296; *State v. Steptoe*, 65 Mo. 640. These decisions of course virtually affirm those which preceded them upon the statute before the amendment to the section as it stood in 1845, and prior thereto, occurred.

There are two of these decisions, the first that of *McGee v. State*, 8 Mo. 495, where the indictment was for murder in the first degree and the verdict was: "We of the jury find the prisoner, John McGee, guilty in manner and form as he stands charged in the indictment," and this court, after quoting the statute as already quoted, said: "The verdict of the jury in this case is not in conformity to this provision, and the judgment should have been arrested. Under the indictment the defendant might have been convicted of murder in the second degree, or of manslaughter, and the court,

could not, as the verdict of the jury stood, know what judgment to render." And the judgment was accordingly reversed.

So too, in *State v. Upton*, 20 Mo. 397, the indictment was for murder in the first degree and the verdict was "guilty in manner and form as he stands charged in said indictment," and the statute was held to be imperative, and the verdict fatally defective, because of the failure of the jury to find in what degree the defendant was guilty, under an indictment on which he could have been convicted of the various degrees of homicide, and consequently the verdict was not such that the court could pronounce the sentence of the law upon.

Our present statute, quoted at the outset, is substantially identical, so far as concerns murder, with the statute of 1845, and, of course, requires similar adjudication. In the recent case of *State v. Montgomery*, 98 Mo. 399, the indictment being for murder in the first degree, the authorities were examined, and it was ruled that, under the present statute, a verdict in this form : "*We the jury find the defendant guilty*," did not ascertain whether the defendant was guilty of murder in the first or of the second degree, and in consequence was worthless.

It is very easy to see that the decision, just mentioned, is of controlling force in the present case, and that the verdict in that case, and in this one, must stand upon the same footing, if it be true, as shown by the cases cited, that a verdict such as in the case at bar does not designate the degree of the offense of which the defendant was adjudged guilty. Touching on this point, Mr. Bishop says : "The view sustained by most of the authorities, and probably best in accord with the reason of the thing, is that the legislature meant by this provision to make sure of the juries taking into their special consideration the distinguishing features of the degrees, and passing thereon. Hence this provision is

in the full sense mandatory; and unless they find the degree in a manner patent on the face of the verdict, without help from the particular terms of the indictment, it is void. No judgment can be rendered thereon, but a second trial must be ordered." 2 Bish. Crim. Proc. [3. Ed.] sec. 595. Wharton says: "Where a statute requires in the verdict a designation of a degree, or the specific assessment of a punishment, a general verdict, without such designation or assessment, will be a nullity." Whart. Crim. Pl. & Pr. [8 Ed.] sec. 752.

These views of eminent authors are abundantly sustained by adjudications in many states, based upon statutes virtually the same as our own, and upon verdicts in nowise different from the one under discussion.

Thus in Alabama, the indictment was for murder in the first degree, and the verdict returned was: "We the jury find the defendant guilty, and assess punishment in the penitentiary for life," and the prisoner was sentenced accordingly. The statute in that state reads: "When the jury find the defendant guilty, under an indictment for murder, they must ascertain by their verdict whether it is murder in the first or second degree," and upon this verdict and statute it was ruled that a judgment of conviction could not be rendered on a verdict of guilty which did not expressly find the degree of the crime, and that such had been the uniform ruling in that state, since the introduction, in 1841, of those provisions into the penal code of that state. *Levison v. State*, 54 Ala. 520.

In California, the statute says: "The jury before whom any person indicted for murder shall be tried shall, if they find such person guilty thereof, designate by their verdict whether it be murder of the first or second degree." In a cause where the indictment was for murder in the first degree, the jury returned a verdict, finding the defendant "guilty of the crime charged

in the indictment," and this verdict was held wholly insufficient to base a judgment and sentence upon, and that the verdict, as returned, had no more designating power than if the simple word "guilty" had been employed. *People v. Campbell*, 40 Cal. 129.

In Ohio, the statute provides : "That, in all trials for murder, the jury before whom the trial is had, if they find the prisoner guilty thereof, shall ascertain in their verdict whether it be murder in the first or second degree, or manslaughter," and upon this statute, where the indictment was for murder in the first degree, and a verdict was returned of " guilty in manner and form as he stands charged in said indictment," it was ruled, BARTLEY, J., delivering the opinion of the court, one of great clearness and force, that the "degree of homicide is a fact which the statute requires to be *specially* found." And in that case, the case of *McGee v. State*, *supra*, is cited with approval. *Dick v. State*, 3 Ohio St. 89. The supreme court of that state held, on circuit, that in a case of murder, where the jury did not specify in their verdict, etc., the court would refuse to pass sentence, and award a new trial, even without a motion on the part of the defendant.

Upon a similar statute, the same view obtains in Connecticut. *State v. Dowd*, 19 Conn. 388.

The statute of Michigan is substantially a transcript of that of Ohio ; a case of murder arose in that state, and the verdict returned was : "That they find the said Robert Tully and John Tully guilty as the people have in their indictment in this cause charged," and it was ruled that the imperative command of the statute, that the jury should determine the degree of the crime, not having been obeyed, the judgment should be reversed. *Tully v. People*, 6 Mich. 273.

For similar rulings upon similar statutes and verdicts, see : *Thompson v. State*, 26 Ark. 323 ; *Ford v. State*, 12 Md. 514 ; *State v. Reddick*, 7 Kas. 143 ; *Kirby*

*v. State,* 7 Yerg. 259; *State v. Moran,* 7 Iowa, 230; *State v. Redman,* 17 Iowa, 329; *Thomas v. State,* 5 How. (Miss.) 20; *State v. Cleveland,* 58 Me. 564; *State v. Rover,* 10 Nev. 388; *Buster v. State,* 42 Tex. 315.

The plain object of the statute is that the jury being instructed by the court, as provided in the fourth clause of section 1908, must first *"inquire"* what degree of homicide the defendant has committed; second, they must *"ascertain"* as a *fact* what that degree of crime is, and, third, they must report the result of their investigations in writing to the court, plainly stating the degree of the crime found by them. If this plain statute be obeyed, the result will be, as the legislature intended it should be, that the verdict of the jury *shall speak, and speak plainly, for itself,* and thus banish all reason or excuse for strained inferences and ingenious or far-fetched conjectures, as to what the jury *meant.*

For the *sole* reason that the verdict in this cause is wholly insufficient, a nullity, the judgment must be reversed, and the cause remanded, and it is so ordered. RAY, C. J., absent; BLACK and BRACE, JJ., concur; BARCLAY, J., in the result.