## The State v. Jackson, *Appellant.*

IN BANC.

1. **Constitutional Amendment**: CRIMINAL CASES APPEALED PRIOR TO ITS ADOPTION. The amendment to the constitution increasing the number of the judges of the supreme court and dividing it into two divisions and conferring exclusive jurisdiction in criminal cases on division number two does not, in its application to cases appealed prior to its adoption, conflict with the constitution of the United States.

2. —— : —— : EX POST FACTO LAW : DUE PROCESS, ETC. Said amendment is not an *ex post facto* provision as to such pending cases nor does it deprive the defendant of due process of law or of the equal protection of the laws.

3. **Criminal Law** : MURDER.: EVIDENCE. The evidence in this case, although circumstantial, *held* sufficient to justify the verdict of guilty of murder in the first degree.

4. —— : INSTRUCTIONS. Instructions which seek out and comment on isolated facts are improper and should not be given.

5. —— : PRACTICE : ORDER OF TRIAL. While the trial court might well grant the request of a defendant that he be allowed to state his case to the jury immediately after the statement made by the prosecuting attorney and before the introduction of evidence by the state, its refusal to do so will not be *held* to be erroneous.

*Appeal from Gasconade Circuit Court.* — HON. RUDOLPH HIRZEL, Judge.

AFFIRMED.

*J. C. Kiskaddon* and *James Booth* for appellant.

(1) The evidence does not warrant the verdict. The proof that a defendant had both a motive and an opportunity to commit a crime is not sufficient of itself to warrant a verdict of guilty. Something more must be proved. 2 Best on Ev. [Morgan's Ed.] secs. 452, 453. The court ought to have directed the jury to find for defendant. *State v. Brosius*, 39 Mo. 534; *State v. Carter*, 72 N. C. 99; *Miller v. Territory*, 19 Pac. Rep. (Wash.) 50; *Olivares v. State*, 23 Tex. App. 305. (2) Instruction, numbered 2, asked by defendant and refused, should have been given. The court should have told the jury what a reasonable doubt is. *State v. Christian*, 66 Mo. 138; *State v. Jackson*, 95 Mo. 623. The instructions refused were improperly refused and those given for the state were incorrect and should have been refused.

*John M. Wood*, Attorney General, for the State.

The instructions given were the same as those given at the former trial and were approved by this court. *State v. Jackson*, 95 Mo. 623. The court instructed fully on the question of reasonable doubt, and there was no error committed in refusing defendant's instruction on that question. No error was committed in not permitting defendant's counsel to make his statement before the state had introduced her evidence. R. S. 1889, sec. 4208.

SHERWOOD, C. J.—This cause which has been here on two former occasions, 95 Mo. 623, and 99 Mo. 60,

has been transferred to court *in banc*, in order that certain constitutional questions, raised by motion for rehearing in division number 2 of this court, where the judgment of the lower court was affirmed, may be heard by a full bench.

The questions thus presented for decision are these : That at the time the alleged crime was committed and at the time the appellant took his appeal the supreme court of this state consisted of five judges who sat together as one body, and to whom, or a majority of whom, a quorum, were submitted for hearing and determination, all appeals, and that to a supreme court so organized and constituted, appellant took his appeal.

That since appellant took his said appeal an amendment to the constitution of said state has been adopted, whereby the said supreme court, from and after the first day of January, 1891, is to consist of seven judges, and is to be divided into two divisions to be known respectively as division number 1 and division number 2, of which divisions the one known as number 2, consisting of only three judges and not of seven, is to have exclusive jurisdiction of all appeals in criminal cases.

That appellant is charged with the crime of murder in the first degree, and that his appeal is from the decision and judgment of the circuit court finding him guilty on a trial for the commission of said crime. That said amendment to the constitution of said state is contrary to section 10, of article 1, of the constitution of the United States of America, in this : That as to this appellant it is an *ex post facto* law.

That said amendment is contrary to the fourteenth amendment to the constitution of the United States of America, in this: That it abridges the privileges and immunities of appellant; that it will deprive appellant of life without due process of law ; that it denies to appellant the equal protection of the laws.

That the people of the state of Missouri having repealed that part of the constitution providing for a

The State v. Jackson.

supreme court of five judges, and having, by said amendment, provided a supreme court of two divisions, only one of which has jurisdiction to hear or determine appeals in criminal cases, there is now no appellate tribunal in existence in this state having jurisdiction to hear and determine the appeal of appellant.

The familiar definition of an *ex post facto* law is a criminal law, retrospective in its operation. More precisely, and with greater fulness, it has been defined as a law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed; or changes the rule of evidence, by which less or different testimony is sufficient to convict than was required." *Cummings v. Missouri*, 4 Wall. 326.

Or if the law changes the punishment after the commission of the offense, by substituting for the prescribed penalty a different one, except where it dispenses with a divisible or separable portion of it, such a law would be *ex post facto*, and consequently unconstitutional. This is the settled law in New York (*Hartung v. People*, 22 N. Y. 95), and has received the approval of Judge COOLEY. Const. Lim. [5 Ed.] 329. This cause, as is obvious, does not fall within either of the above definitions of a retrospective criminal law. Nor is it numbered within those definitions because the organic law, since the commission of the offense, has provided for a change in the number or the *personnel* of those who, in the court of last resort, are to sit in the ultimate judgment.

Such matters are but mere matters of procedure, concerning which the same rule prevails in criminal prosecutions as in civil actions, that the law regulating the same may be changed, without infringing any recognized or indeed substantial right of the party accused. On this point the writer just cited aptly remarks: "Remedies must always be under the control of the legislature, and it would create endless

confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts, in existence when the fact arose. The legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections with which the existing law surrounds the person accused of crime.'' Secs. 329, 330, and cases cited.

'' A statute may authorize the punishment to be inflicted by a court which had no jurisdiction over the offense at the time of its commission.'' 1 Bishop Cr. Law [7 Ed.] sec. 280; Stat. Crim., sec. 180.

And a statute which created a new court, or confers an additional jurisdiction on a court already organized, or enlarges or diminishes the powers of an existing court, does not fall under the constitutional ban against an *ex post facto* law. *Com. v. Phillips*, 11 Pick. 28; *State v. Sullivan*, 14 Rich. 281.

In the light of these authorities, and by parity of reasoning, it cannot be doubted that it was entirely competent for the people to adopt such a change in their *organic law* as to take away from this court as *a whole* all cognizance of criminal causes, and to confer such jurisdiction on a portion or division of this court, though less in numbers and different in *personnel* from this court as organized when the crime in question was committed. Nor do we see how, or in what way, the change in the administration of the criminal law, as applied to the appellate jurisdiction of a division of this court, deprives the defendant of either due process of law or the equal protection of the laws.

The theory contended for by defendant's counsel would absolutely preclude from punishment anyone whose crime should be perpetrated just prior to the reorganization and change of that portion of the judicial system of this state, having jurisdiction, either trial

or appellate, over criminal offenses.  Such a theory will not bear criticism and must be repudiated.

These are among the reasons which actuated us when approving the judgment of division number 2 of this court, and we now give them utterance.  All concur.

### DIVISION TWO.

GANTT, P. J.—The appellant, Webster Jackson, was indicted by the grand jury of Franklin county for the murder, in the first degree, of Alexander McVickers on October 22, 1886.

On this indictment he was arraigned, tried and convicted in the circuit court of Franklin county and sentenced to be hanged.  He appealed to this court, and the cause was reversed and remanded for a new trial  95 Mo. 623.  After the remanding of the cause, a change of venue was granted defendant to Gasconade county.  The prisoner was again tried at the April term, 1889, of the Gasconade circuit court and again convicted and sentenced to be hung.  He again appealed to this court and the sentence was reversed and the cause again remanded for new trial ( *State v. Jackson*, 99 Mo. 60 ) for the *sole reason* that the verdict was *insufficient in form* to sustain the judgment and sentence of the trial court.  The defendant was again tried at the May term, 1890, of the Gasconade court, and convicted of murder in the first degree, and sentenced to be hung.  From this sentence he has appealed to this court.

The learned counsel for the defendant have again urged upon us the insufficiency of the testimony to sustain the conviction of defendant, and, as a human life is at stake, we have examined the record anew.  There is no material difference in the facts disclosed at this last trial from those appearing on the former two trials ; and, as these facts so fully appear in the report of the cause in 95 Mo. 623, it will serve no good purpose to repeat them here.

While these facts make a case of circumstantial evidence, in so far as they tend to fix upon defendant the perpetration of the murder, we see no cause for departing from the two former opinions of this court holding that there was sufficient evidence to justify the verdict of the jury.

That Alexander McVickers was murdered on the twenty-second day of October, 1886, and that robbery was the motive for the crime, scarcely admits of a doubt, and indeed is conceded by all in the argument. The defendant has been three times tried, and three juries have declared him guilty of the murder of McVickers. We think there was sufficient evidence tending to criminate the defendant, circumstantial though it was. It points so strongly to his guilt that we are not justified in suggesting doubts, that would reverse every conviction on circumstantial evidence, and we must decline to interfere with the conviction on the ground that the evidence does not justify the verdict.

The instructions given for the state are the same that were given on the same evidence and were approved by this court when the cause was last here. 99 Mo. 60. Moreover, they covered the law of the case and left nothing to be desired. There was no error in refusing any instructions prayed by defendant, as those which were correct in themselves were given by the court substantially, and those that sought to have the court comment on isolated facts were improper and rightfully refused.

Judges on the circuit are not supposed to be in a situation to write long discourses on the law ; "neither the time nor the means is furnished them for that purpose." The propensity of the trial courts to give instructions to counsel for the defense in criminal prosecutions was properly condemned in *State v. Ross*, 29 Mo. 32. It is not every proposition that may be mooted or suggested by astute and zealous counsel that is necessary for the information of a jury in giving its

verdicts. And in this case we hold that the instructions of the court fully met all the requirements of justice and the statute. R. S. 1889, sec. 4208.

In the trial, immediately after the prosecuting attorney had made his opening statement of the case, the defendant's counsel requested the court to permit him to make the opening statement for the defendant, without waiting till the state had offered its evidence in chief. To this the prosecuting attorney objected and the court sustained the objection ; to this action of the court the defendant excepted. Section 4208 of Revised Statutes of 1889 provides the order of trial. This section was first introduced into our statutes in 1879, and received a construction by this court in *State v. Honig,* 78 Mo. 249. It was there held that, in so far as the state was required to open the case, it was mandatory, but it was observed in that case that the legislature had left some things to the discretion and pleasure of counsel, and it was provided that the defendant or his counsel *may state* his defense after the close of the state's case.

While we think it is clear that this statutory order of trial is for the benefit of the defendant, and that he is not required to state or disclose his defense until the state's case has been made, we see no good reason why he may not waive it, nor, on the other hand, why the court should refuse it. There are often cases where it is advantageous to the jury and the court to have both statements made at once ; and, while we hold that no error was committed in this case, in refusing the request of defendant, we think it might well have been granted,

There was no error in the admission or rejection of evidence. The judgment of the circuit court is affirmed, and it is ordered and adjudged that the sentence therein pronounced be executed on March 27, 1891. All the judges of this division concur.