### COMMONWEALTH *vs.* SILAS N. PHELPS.

Franklin. September 19, 1911. — October 17, 1911.

Present: RUGG, C. J., HAMMOND, LORING, & BRALEY, JJ.

*Constitutional Law, Ex post facto law.*

St. 1910, c. 555, § 3, repealing R. L. c. 157, § 8, which provided that capital cases should be tried before two or more judges of the Superior Court, is not an *ex post facto* law as applied to the trial before a single judge of the Superior Court of an indictment for a murder committed before the repeal of R. L. c. 157, § 8.

INDICTMENT FOR MURDER, found and returned on July 12, 1910. The defendant was convicted, and a decision of this court overruling his exceptions is reported in 209 Mass. 396.

The rescript from this court ordering the clerk of the Superior Court to make the entry that the exceptions were overruled was

dated June 21, 1911, and was received and filed in the Superior Court on June 22, 1911.

On July 17, 1911, the defendant filed the following motion in arrest of judgment:

" Now comes the defendant in the above-entitled action and respectfully shows unto the court that on the twelfth day of June, 1910, the time the alleged offense was committed, section 8 of chapter 157 of the Revised Laws was in full force and effect, and required that the trial of capital cases should be held before two or more justices, at a regular or special sitting of the court; that the defendant, by virtue of said statute, was entitled to the judgment and discretion of two justices of the court; that at the trial which was held at the November sitting, 1910, one justice presided, and heard and determined all questions of law, and exercised and determined all questions of discretion, contrary to section 8 of chapter 157 of the Revised Laws.

" Wherefore, the defendant says that he was deprived of the benefit of the provisions of section 8 of chapter 157 of the Revised Laws, and that a single justice of the court did not have jurisdiction to hear and determine the questions of law and to act upon questions of discretion on the trial of the indictment returned against him for murder, and moves that judgment in said action may be arrested."

The motion was heard and denied by *Fessenden* J., and the defendant appealed from the order denying the motion.

*W. A. Davenport,* (*H. E. Ward* with him,) for the defendant.

*R. W. Irwin,* District Attorney, for the Commonwealth, submitted a brief.

LORING, J.   The question in this case is whether a statute enacted after the commission of an offense is void as an *ex post facto* law because its effect is to provide that one in place of two or more judges shall preside when the defendant is tried by a jury.

The question thus raised is a question upon which the Supreme Court of the United States is the final authority.   The general rule was laid down by that court in *Duncan* v. *Missouri,* 152 U. S. 377, 382, in these words: " It may be said, generally speaking, that an *ex post facto* law is one which imposes a punishment for an act which was not punishable at the time it was

committed; or an additional punishment to that then prescribed; or changes the rules of evidence by which less or different testimony is sufficient to convict than was then required; or, in short, in relation to the offense or its consequences, alters the situation of a party to his disadvantage; *Cummings* v. *Missouri,* 4 Wall. 277; *Kring* v. *Missouri,* 107 U. S. 221; but the prescribing of different modes of procedure and the abolition of courts and creation of new ones, leaving untouched all the substantial protections with which the existing law surrounds the person accused of crime, are not considered within the constitutional inhibition. Cooley, Const. Lim. (5th ed.) 329." And in the subsequent cases of *Thompson* v. *Missouri,* 171 U. S. 380, 386, and *Mallett* v. *North Carolina,* 181 U. S. 589, 596, 597, the more particular statement of the general rule originally put forward in Cooley's Constitutional Limitations was approved; " But so far as mere modes of procedure are concerned, a party has no more right, in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the Legislature, and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the courts, in existence when its facts arose. The Legislature may abolish courts and create new ones, and it may prescribe altogether different modes of procedure in its discretion, though it cannot lawfully, we think, in so doing, dispense with any of those substantial protections. with which the existing law surrounds the person accused of crime." See Cooley, Const. Lim. (7th ed.) 381.

It was accordingly decided by the United States Supreme Court, in *Gibson* v. *Mississippi,* 162 U. S. 565, that a subsequent statute, requiring members of the grand jury to be persons of good intelligence, sound judgment and fair character as well as qualified voters and able to read and write, was not void as an *ex post facto* law; in *Thompson* v. *Missouri,* 171 U. S. 380, that a subsequent statute, providing that comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine should be permitted to be made by the witnesses and submitted to the jury, was a valid act; and in *Mallett* v.

*North Carolina*, 181 U. S. 589, that a subsequent act, giving the State an appeal in a criminal case, was not void as an *ex post facto* law. It was held on the other hand in *Thompson* v. *Utah*, 170 U. S. 343, that the provision of the Constitution of the State of Utah, providing that cases should be tried by a jury of eight, was void as an *ex post facto* law in its application to felonies committed while Utah was a territory.

To come to decisions nearer to the question in the case at bar, it was decided by this court in *Commonwealth* v. *Phillips*, 11 Pick. 27, that a subsequent statute transferring jurisdiction from the Supreme Judicial Court to the Municipal Court was not void as an *ex post facto* law. In that case Chief Justice Shaw said, at p. 31 : " A new tribunal may be erected, or new jurisdiction given to an existing court, to try past offenses, and this is not *ex post facto*." In *State* v. *Jackson*, 105 Mo. 196, at the time of the killing, the court of appeal consisted of five judges a majority of whom made a quorum. By a subsequent constitutional amendment the number of judges of that court was raised to seven and it was divided into two divisions, one of which only had jurisdiction in criminal cases. That division consisted of three judges. It was held that " it was entirely competent for the people to adopt such a change in their organic law as to take away from this court as a whole all cognizance of criminal causes, and to confer such jurisdiction on a portion or division of this court, though less in numbers and different in personnel from this court as organized when the crime in question was committed." The case of *Commonwealth* v. *Phillips*, 11 Pick. 28, was relied upon by the Supreme Court of Missouri in coming to that conclusion. For a similar decision see *State* v. *Thompson*, 141 Mo. 408.

Finally it has been a common practice in this Commonwealth to do the very thing here complained of, namely, to enact statutes reducing the number of judges who are to preside at the trial of capital cases without excepting from their operation and making special provision for cases where the killing took place before the statute was enacted. This is not decisive of the constitutionality of such acts, but this practice, extending over a number of years, is an indication of what by common consent has long been regarded as within the limits of the Constitution.

By force of St. 1782, c. 9, and St. 1804, c. 105, capital cases were
to be heard, tried and determined by this court sitting *in banc*.
It was held in *Commonwealth* v. *Hardy*, 2 Mass. 303, that this
provision covered the arraignment of the defendant in a capital
case.   St. 1832, c. 130, § 6, provided that a prisoner in such a
case could be arraigned at a term of court holden by a single
justice, leaving the trial to be conducted by the full court.   This
continued to be the law (see Rev. Sts. c. 81, §§ 15 and 13) until
1859, when from July 1 of that year until May 31, 1860, the
Superior Court had jurisdiction of capital cases and trial was to
be had before three justices of that court.   St. 1859, c. 196, §§ 1,
21.   We are not aware that any trial was held under these pro-
visions.   They were repealed and the former law re-established
by Gen. Sts. c. 112, §§ 5 and 8; c. 181, § 2; c. 182, at p. 905;
and it continued in force until the enactment of St. 1872, c. 232.
That act provided that two or more justices of this court present
at a jury term should have the powers of the full court in the
trial of indictments for the crime of murder.   This continued to
be the law (see Pub. Sts. c. 150, §§ 18, 19) until the enactment
of St. 1891, c. 379.   By that act jurisdiction over capital cases
was transferred to the Superior Court, and by § 2 it was provided
that the trial should be before three justices.   By St. 1894,
c. 204, that was changed so that the trial could be before two or
more justices.   That continued to be the law (see R. L. c. 157,
§ 8) until the enactment of the statute here in question (St. 1910,
c. 555, § 3) which repealed R. L. c. 157, § 8, and left trials in
capital cases to be conducted by one or more justices under
R. L. c. 157, § 2.

In the case at bar there was no change in the indictment that
had to be found nor in the conduct of the trial by which the fact
of the defendant's guilt had to be established, nor in his right to
have any and all questions of law reviewed by the same appellate
court that was in existence when the alleged crime was com-
mitted.   The only change was in the fact that one in place of
two or more judges was to and did preside at the trial.   The
learned counsel for the defendant has frankly admitted that the
only connection in which this change operated to the injury or
prejudice of the defendant was in matters lying in the discretion
of the presiding judge.   His contention is that the fact that

while before St. 1910, c. 555, § 3, matters lying in the discretion of the presiding judge were decided by two or more judges, at the trial they were decided by one judge only.   But the reason why matters which are left to be finally decided in the discretion of the presiding judge are left to be so decided is because they are matters of such a character that whichever way they are decided it cannot be said that they are decided wrongly.   We are of opinion that a change by which such matters are to be decided by one in place of by two or more judges is not a change which affects the substantial protection with which at the time the offense was committed the existing law surrounded the defendant as a person accused of crime.   It follows that St. 1910, c. 555, § 3, repealing R. L. c. 157, § 8, is not void as an *ex post facto* law.

The entry must be that the order denying the motion in arrest of judgment should be affirmed.

*So ordered.*