COMMONWEALTH vs. CARL BENJAMIN
(and companion cases).

Middlesex. January 4, 1971. — February 9, 1971.

Present: TAURO, C.J., CUTTER, REARDON, & QUIRICO, JJ.

*Pleading, Criminal,* Indictment or complaint, Variance, Bill of particulars. *Practice, Criminal,* Dismissal, Amendment. *Accessory. Constitutional Law,* Ex post facto law.

An indictment for conspiracy to forge, utter, and steal, in essentially the statutory form, containing 122 counts, each count naming the same victim and the same co-conspirators and differing only as to the date on which the offence was alleged to have been committed by the defendant, when read with a bill of particulars, sufficiently alleged a criminal offence, and, although a more concise expression of the conspiracy would have been preferable, should not have been dismissed on the ground that a single, continuing conspiracy had been fragmented "into 122 separate criminal offences." [675–676]

The record in pre-trial proceedings upon an indictment sufficient to charge conspiracy and containing many counts, each of which referred to a different specific criminal act, showed no variance between the indictment and particulars relating to that act, and dismissal of the indictment on the ground of variance was not warranted. [677]

The validity of an indictment is not to be tested by a consideration of the evidence before the grand jury. [677]

Obtaining multiple, repetitious, and overlapping indictments, or counts in an indictment, must be avoided. [677–678]

The record in pre-trial proceedings upon an indictment containing many counts, each of which charged the defendant with the commission of a particular substantive offence on the date set forth therein, and many of which were amended by the substitution of a new date, disclosed no error in the denial, by a judge other than the judges who had allowed the amendments, of a motion to dismiss the amended indictment, or to strike the amendments, on the ground that the offence charged by the grand jury was materially changed. [678–679]

St. 1968, c. 206, § 1, amending G. L. c. 274, § 2, was intended to remove the distinction between principal and accessory so far as an indictment was concerned, and made only procedural changes in § 2; and, as to an indictment returned after its enactment charging the defendant as a principal with forgery, uttering, and resulting larceny by acts committed prior thereto, was not an ex post facto law, even if evidence established that the defendant was only an accessory before the fact under G. L. c. 274, § 2, as it stood prior to the 1968 amendment. [679–681]

INDICTMENTS found and returned in the Superior Court on October 21, 1968.

The cases were reported by *McLaughlin*, J. following allowance of motions to dismiss conspiracy indictments and the denial of motions to dismiss other indictments.

*Walter J. Hurley* for the defendant Benjamin.

*Thomas J. Herbert* for the defendant Lawrence.

*John B. Murphy, Jr.*, for the defendant Monroe.

*William P. Homans, Jr.*, for the defendant Roberts.

*Dante J. DeMichaelis*, Assistant District Attorney, for the Commonwealth.

CUTTER, J. A Superior Court judge has reported for our determination [1] pre-trial questions arising with respect to indictments of several defendants.[2]

---

[1] General Laws c. 278, § 30A (inserted by St. 1954, c. 528), permits a report before trial of an issue important "in the interest of justice" in the "opinion of the presiding justice." Nevertheless, this court, as matter of discretion, will postpone decision of issues thus reported until appellate review after trial, where such action seems more appropriate as a matter of judicial administration. There should be no resort to such a report except on issues of substantial significance.

[2] The other defendants are Edward Roberts, Robert Lawrence, and Clair Monroe. Paul Brousseau is alleged to have been a participant in the conspiracy described in some indictments. He is not one of the defendants involved in the present report.

## I.

Each defendant was charged in a single but separate indictment with conspiracy to forge, utter, and steal. Each such conspiracy indictment contained 122 counts.[3] The defendants filed motions to dismiss these indictments or to require the Commonwealth to elect one count of each indictment upon which it would prosecute. In the motions, it is asserted "that each of the 122 counts allege[s] in identical language a conspiracy to forge, utter, and steal, each naming the same alleged co-conspirators, and differ only as to the date on which the offence is alleged to have been committed." It is also contended (a) that conspiracy is a continuing offence and (b) "that the Commonwealth has taken a single conspiracy and has fragmented it into 122 counts on the principle that each overt act committed pursuant to the conspiracy constitutes a separate and distinct conspiracy." This is apparent, so the motions contend, "from the dates alleged, the identical language of the charging section of the counts, the identity of the alleged co-conspirators, the similarity of documents provided by the Commonwealth in support of each count, [and] the statements made by the Commonwealth during pre-trial hearings."

The trial judge made the following findings (among others): (1) that each defendant was charged in identical language in each of 122 counts; (2) that dates of the alleged offences were identical for each defendant; (3) that in certain companion indictments for conspiracy to make false entries in corporate books, one indictment with one count was returned against each defendant "alleging a continuing conspiracy between . . . October 1, 1964, and April 30, 1967"; and (4) that particulars filed by the Commonwealth "allege a single ongoing conspiracy . . . [among] the defendants to accomplish the illegal . . . forging of" notes or

[3] A sample conspiracy count reads in part "That Carl Benjamin on or about . . . [October 1, 1964], in the County of Middlesex . . . did conspire with . . . [other defendants] (1) to forge a certain instrument purporting to be a promissory note with intent to injure and defraud, (2) to utter and publish as true a certain forged instrument well knowing the same to be forged, with intent to injure and defraud, and (3) to steal money of the property of First Finance Corp."

checks, uttering them, and larceny. Each set of particulars refers to a different or separate alleged forgery.[4]

The judge then concluded "that the single all pervading charge is that . . . [there was a conspiracy] to commit larceny" from a single victim by forging and uttering fictitious notes and checks which, in effect, would amount to only one "continuing unlawful agreement" to commit a number of crimes. He ruled that the fragmentation of a single conspiracy "into 122 separate criminal offences," was detrimental to the defendants. He allowed the motions to dismiss.

The bills of particulars do strongly indicate that the form of the indictments is clumsy and repetitious. In effect, 122 counts have been employed to set forth what could reasonably be viewed as a single conspiracy (or perhaps only a few conspiracies). The form of the indictments, however, may not obscure the circumstance that each count sufficiently sets forth a serious criminal charge which, read with the related bill of particulars, adequately advises each defendant of the charge against him. Each count refers to a particular criminal act, which at trial may be proved to be either (a) an unlawful act in furtherance of a continuing conspiracy, or (b) in itself, the unlawful object of a conspiracy to commit that act. The statement of the substantive charges against the defendants has not been shown to be inadequate in any way. The defendants' arguments on the alleged fragmentation of the charges seem to be addressed merely to inconsequential niceties of form.

The conspiracy indictments could and should have been expressed more concisely and in a manner more consistent with the clear, informative statements in the narrative bill of particulars. That the prosecution could have produced

---

[4] The judge also found, largely on the basis of an obscure colloquy with an assistant district attorney, that "the apparent distinction . . . [among] the separate counts was based on the theory that if monies obtained under the . . . scheme were used for different purposes, it would thereby create a separate . . . offence." This finding neglects a more significant difference, viz., that each count related to a "particular forging, uttering, and larceny." There was a further finding that trial would involve testimony from about 100 witnesses and would consume from six months to a year.

less complex charges, however, does not mean that the indictments are necessarily invalid or deficient. They are in essentially the statutory form and are sufficient to allege a criminal offence. See G. L. c. 277, § 79; *Commonwealth* v. *Bessette,* 345 Mass. 358, 359–361. They are not open to dismissal.

The motions to dismiss attempt more than an attack upon formal defects apparent on the face of the indictments. In effect, they seek to show a variance between each count and the bill of particulars supporting that count. They may attempt also to show that the 122 separate counts are inconsistent with the evidence actually presented to the grand jury.[5]

A variance between an indictment and a bill of particulars under it is not ground for the dismissal of an indictment which is sufficient because in the statutory form or for other reasons. *Commonwealth* v. *Iannello,* 344 Mass. 723, 726–727. The purpose of a bill of particulars is to "give the defendant . . . reasonable knowledge of the nature and grounds of the crime charged." See G. L. c. 277, § 40; *Commonwealth* v. *Baron,* 356 Mass. 362, 364 (see also p. 365). The *Iannello* case, *supra,* makes it clear that the sufficiency of an indictment is not to be measured by the particulars designed to inform defendants of the charges against them. These (see c. 277, § 40) may be amended by court order.[6]

---

[5] The burden is on the defendants, of course, to establish the facts, if any, necessary to support a motion to dismiss. To this end the third par. of G. L. c. 277, § 47A (inserted by St. 1965, c. 617, § 1), and Rule 46 of the Superior Court (1954) (see also Rule 101A [1964]) require affidavits to be presented stating the facts on which reliance is placed. No such affidavits were filed in support of these motions to dismiss. The requirement of really adequate affidavits should be strictly enforced as a matter of good judicial administration. The 1965 act (§ 47A) was designed to simplify criminal pleading. See 1965 Senate Bill Nos. 291, 933, and Senate Doc. No. 1086. See also St. 1965, c. 756, and 1965 House Doc. No. 4286.

[6] If the particulars for an indictment count show more background facts than are necessary to prove a conspiracy to do the particular unlawful act charged in that count, the defendant is not harmed by being given more relevant information about the case against him than is necessary. If the particulars contain irrelevant or prejudicial material, a defendant may move to strike whatever is offensive. If more detailed information is desired about a particular unlawful purpose alleged, a request for further particulars may be appropriate. See *Commonwealth* v. *Giacomazza,* 311 Mass. 456, 461; *Commonwealth* v. *White,* 353 Mass. 409, 413.

Commonwealth *v.* Benjamin.

The present record shows no variance between the indictment and the particulars. Proof of the facts set out in the particulars would support conviction of the offence charged in each related indictment. In view of the wide range of proof permitted in establishing a conspiracy (see e.g. *Commonwealth* v. *Stasiun,* 349 Mass. 38, 50–53), each separate offence charged as being an object of a conspiracy could be proved under the indictments as they stand.

The judge also should not have tested the validity of the 122 conspiracy counts by whether the evidence before the grand jury would support a conviction on those counts respectively. There was no occasion for him to make any such inquiry in considering the validity of the indictments. See *Commonwealth* v. *Geagan,* 339 Mass. 487, 499. We, of course, do not suggest that the judge could not consult the grand jury minutes in preparation for trial, in determining whether witnesses at trial had made prior inconsistent statements, or for other reasons.

The judge's report asks two questions, the answers to which are controlled by the foregoing discussion, viz. (1) whether, on the statements of counsel and other documents before him, he was entitled to make the findings underlying his dismissal of the indictments; and (2) whether, if that record did not warrant dismissal of the indictments, he could use the grand jury minutes as a basis for his action. Although the questions asked are not entirely apposite, we answer them in the negative.[7]

Our holding that the dismissal of the indictments was not proper should not be regarded as approval of the practice of obtaining multiple, repetitious, and overlapping

---

[7] A trial judge, of course, has at his disposal substantial means of expediting and simplifying the trial of complicated cases of this type. He, by control of the order of presenting evidence, may require early proof of any general or continuing conspiracy or group of conspiracies. These may make unnecessary proof concerning a number of more detailed indictment counts. He may require (on reasonable conditions calculated to expedite trial if the defendants accept them) various forms of pre-trial disclosure (by the prosecution) of documents, books of account, and other physical evidence. He may require (on like conditions) further particulars where that will facilitate trial.

indictments (or counts in indictments) where fewer indictments or counts not only would suffice, but probably would much more clearly present the charges. Multiple indictments, such as those in the present cases, impose an unnecessary burden on courts, juries, and parties. They cause unnecessary expense and confusion, and may lead to unduly long trials. We regard the practice as objectionable. Where new indictments, more simply framed, may still be obtained within the period of the applicable statute of limitations, we think a trial judge may and should require a district attorney to attempt to obtain them.

## II.

The Commonwealth was permitted to amend indictments charging particular substantive offences (forging and uttering, larceny, larceny by false pretences) by substituting a new date for the particular date set forth in each of many counts of the indictments. Some of the amendments effected only a minor correction in the date of the particular offence alleged. Other amendments made a change of several months. The amendments originally were allowed by judges other than the judge filing the report. The latter judge denied the defendants' motions to dismiss the amended indictments or to strike the amendments.

The Commonwealth justifies the amendments (1) as pertaining to dates, which are matters of form rather than substance, and (2) as authorized under G. L. (Ter: Ed.) c. 277, §§ 20, 35A. See *Commonwealth* v. *Manooshian*, 326 Mass. 514, 516. The judge's report and the record do not contain enough facts to enable us to determine whether any prejudice to the defendants was caused by the particular amendment [8] relating to the date alleged concerning any particular

---

[8] It is not unreasonable to infer that, in some instances, the allegedly forged document may have borne upon it, in addition to its date of issue, the date of acceptance, endorsement, or payment. This may have led to initial allegation of an inaccurate date in the indictment count. If this be the case, it would seem likely that correcting the count would be informative and helpful, rather than prejudicial, to the defendant concerned.

check, note, or instrument said to have been forged. If at trial such prejudice appears, or if the change appears to be based on significant error (so that the amendment materially changes the work of the grand jury), the motion to strike the amendment may be renewed. The present record discloses no error in denying the motions.

## III.

Indictments (over 2,000 counts alleging forgery, uttering, and resulting larceny) were returned on October 21, 1968, charging each defendant as a principal. Counsel and the defendants were allowed to examine the documents relied upon by the Commonwealth. Concerning motions to dismiss these indictments, the defendants asserted that the actual signature upon many of the documents was not written by any defendant. The assistant district attorney stipulated "that the Commonwealth's evidence in one or more instances would establish that the defendants did not personally forge or utter the documents in question, but . . . did aid in the commission of the alleged forgeries and utterings by counselling, hiring, or otherwise procuring other persons to commit the offence alleged."

All acts alleged in the indictments were committed prior to 1968, when (by St. 1968, c. 206, § 1) G. L. c. 274, § 2, was amended to read as follows: "Whoever aids in the commission of a felony, or is an accessory thereto before the fact by counselling, hiring, or otherwise procuring such felony to be committed, shall be indicted, tried and punished as a principal." Prior to the 1968 amendment, c. 274, § 2, read: "Whoever aids in the commission of a felony, or is accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed, *shall be punished in the manner provided for the punishment of the principal* felon" (emphasis supplied).

The defendants claim that the 1968 statute, as applied to their prior acts, is an ex post facto law. See Constitution of the United States, art. 1, §§ 9, 10; art. 24 of the Declara-

Commonwealth *v.* Benjamin.

tion of Rights of the Constitution of the Commonwealth. The tests to be used in deciding whether a statute constitutes an ex post facto law are stated in *Calder* v. *Bull*, 3 Dall. 386, 390, and in *Commonwealth* v. *Phelps*, 210 Mass. 78, 79–80, where it was said that "an *ex post facto* law is one which imposes a punishment for an act . . . not punishable at the time it was committed; or an additional punishment to that then prescribed; or changes the rules of evidence by which less or different testimony is sufficient to convict than was then required; or, in short, in relation to the offense or its consequences, alters the situation of a party to his disadvantage." Measured by this language, the 1968 statute is not an ex post facto law.

Whether the defendant be indicted as a principal under the 1968 statute or under the preëxisting provisions of c. 274, § 2 (see also c. 274, § 3, and its amendment by St. 1968, c. 206, § 2), the substance of the crime is the same. Proof of the same facts would permit conviction. There is no change in the permissible punishment. Essentially the new statute merely calls the offender a principal instead of calling him an accessory. That formerly, for some purposes, the crimes were separate was an artificial matter going chiefly to the form of the indictment. See *Commonwealth* v. *DiStasio*, 297 Mass. 347, 357. See also *Commonwealth* v. *Holley*, 3 Gray, 458, 459.

The purely procedural character of the 1968 amendment is apparent from its legislative history. Resolve 1967, c. 30, referred 1967 House Doc. No. 1858 (essentially in the form of G. L. c. 274, § 2, inserted by St. 1968, c. 206, § 1) to the Judicial Council for comment. In the Forty-Third Report of the Judicial Council (1967), Pub. Doc. No. 144, pp. 71–73, it was said that "the true aim of the proposed legislation is to remove the distinction between principal and accessory *so far as the indictment is concerned*. At present a person involved in a crime may be indicted as a principal and may be able to avoid conviction by demonstrating that he was an accessory before the fact" (emphasis supplied). Of the old c. 274, § 2, the report said, "This existing

section . . . is to be replaced by a new section . . . which would not only provide that an accessory before the fact be *punished* in the same manner as the principal, but also indicted, and tried as a principal." Later (p. 73) the report said, "The time has come to eliminate the present artificial distinction involved here so far as the indictment is concerned."

We conclude that the 1968 statute made only procedural changes in § 2. Indeed, the unification of the offences might well be to a defendant's advantage in precluding multiple prosecutions. There is no occasion for dismissing those indictments where the Commonwealth's evidence would establish the guilt of a defendant only as an accessory before the fact within the meaning of G. L. c. 274, § 2, as it stood prior to the 1968 amendment.[9]

## IV.

The questions set out in the report are answered in accordance with the foregoing discussion. The cases are to stand in the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[9] In some cases (e.g. bribery), even under the preëxisting statute (§ 2), the defence of nonpresence was not available to one charged as a principal, who had participated substantially in a common criminal enterprise, even though an employee or agent. See e.g. *Commonwealth* v. *Mannos*, 311 Mass. 94, 108; *Commonwealth* v. *Stasiun*, 349 Mass. 38, 45–49. See also *Commonwealth* v. *Connolly*, 308 Mass. 481, 489–490. The report does not adequately disclose to what extent the evidence may make the principle of such cases applicable.